DETERMINED IN

# THE SUPREME COURT

OF THE

## STATE OF NEVADA.

### APRIL TERM, 1874.

---

## J. F. COOKES, Respondent, *v.* O. H. P. CULBERT-SON, Appellant.

Mortgagee in Possession to Account for Rents and Profits. Where the circumstances show that a person in possession of real estate under a deed absolute on its face holds it in fact only as security for a debt, he will be compelled to account for the rents and profits.

Statute of Limitations—Action on Mortgage where Remedy on Debt Barred. Where money is loaned without note or writing and a mortgage is given to secure its repayment, though the statute of limitations may run against an action on the debt in two years, it does not run against a foreclosure of the mortgage in less than four years.

Improvements by Mortgagee in Possession. A mortgagee in possession is entitled to allowance for necessary and proper repairs, but he will not be credited with costly improvements, though the value of the estate be increased thereby, unless made with the mortgagor's consent.

Improvements in Good Faith as Off-Set to Rents and Profits. If beneficial improvements are made by a person in good faith under the belief of absolute ownership, their value will be allowed him, on an accounting between him and the true owner for rents and profits.

Appeal from the District Court of the Second Judicial District, Washoe County.

This was an action for an accounting of the rents and pro-fits of certain real estate in the town of Reno, Washoe County, held by defendant under a deed absolute upon its face but claimed to be a mortgage, and for a decree that plaintiff might redeem the same. There were findings and decree in favor of the plaintiff; and, among other things, that defendant had received payment, in the way of rents and profits, of his debt and of all the incidental expenses which should be allowed him, such as taxes and necessary repairs. Defendant was ordered to make a deed to plaintiff and to deliver over to him the possession of the property. Defendant moved for a new trial, which was denied; and he then took this appeal from the judgment and order.

*Haydon & Cain,* for Appellant.

I. The deed from Piper to Geller was not intended to be a mortgage securing a valid binding debt from Cookes to Geller; for the amount paid by Geller, $1750, was to be re-funded to him with interest at $2\frac{1}{2}$ per cent. a month. Gel-ler had no legal remedy to enforce this parol obligation to pay interest at that rate by foreclosure ; but, having the deed and the legal title, he could refuse to convey the prop-erty to Cookes until Cookes complied with his terms. This makes the transaction a conveyance of the estate from Piper to Geller in fee simple absolute—with a secret parol trust by Geller to re-convey the estate to Cookes upon his due performance of the conditions of the trust on his part. Such a trust is not binding; and if therefore Geller upon non-performance of the conditions denies his trust, and there is no written agreement or document establishing it, he cannot be in equity compelled to convey, this being in the teeth of the statute of frauds. 2 Story's Eq. Jur., 637; *Lathrop* v. *Hoyt,* 7 Barbour, 59. Again, the defendant had no notice that Geller held only a mortgage of the property.

By putting the absolute deed from Piper to Geller on record, they are estopped from relying on the continuance in possession as notice that Cookes was a mortgagor only. *Fair* v. *Howard*, 5 Nevada, 307 ; *Mesick* v. *Sunderland*, 6 Cal., 315. But the possession of Cookes was perfectly consistent with our theory that Geller held the legal title under a secret parol trust to convey the same to Cookes on his due performance of certain conditions. Geller gave Cookes ample opportunity to earn or to borrow the money that would pay him his claims against Cookes ; but this, although known to defendant, was no notice of a mortgage to him.

II. The time wherein the deed might be declared a mortgage had elapsed by limitation. The debt (if there was any) from Cookes to Geller, and, according to plaintiff's theory, by novation transferred to Culbertson, was parol, and created July 18, 1870. It was therefore barred at the commencement of this action. *Espinosa* v. *Gregory*, 40 Cal. 62 ; *Hughes* v. *Davis*, 40 Cal. 117 ; *Henley* v. *Hotaling*, 41 Cal. 27 ; *Conway's Exrs.* v. *Alexander*, 7 Cranch, 237.

III. Whether defendant entered into possession as a mortgagee or the holder of a trust of a trust deed, he is only to account for the net proceeds of the estate. The repairs made were actually necessary, and defendant only received rents over and above necessary repairs and taxes. Without repairs it could not have rented at such a price. *Hidden* v. *Jordan*, 28 Cal. 301; *Hughes* v. *Davis*, 40 Cal. 117; 14 Wendell, 233; 15 Wendell, 248; 4 Kent's Com. 166.

IV. To declare an absolute deed to be a mortgage the evidence must be so cogent, weighty and convincing as to leave no doubt upon the mind; and such proof, and such proof alone, ought to overcome it, and not by an appeal *ad misericordiam* or the bare cry of fraud. *Bingham* v. *Thompson*, 4 Nev. 224; *Henley* v. *Hotaling*, 41 Cal. 26; *Roberts* v. *Ware*, 40 Cal. 636.

14

*Webster & Knox* and *R. M. Clarke,* for Respondent.

I.   Under the findings, which are clearly supported by the evidence, Geller became a trustee for Cookes; and the deed from Piper to Geller, though absolute in its terms, was in equity a mortgage.   *Coates* v. *Woodworth,* 13 Ills. 654; *Page* v. *Page,* 8 N. H. 187; *Boyd* v. *McLean,* 1 John. Ch. 582; *Hidden* v. *Jordan,* 21 Cal. 92; *Leahigh* v. *White,* 8 Nev. 149; *Lodge* v. *Turman,* 24 Cal. 385.   Parol evidence is admissible to show a deed absolute on its face to be a mortgage; and where the deed was given to secure a debt or loan, a right to redeem exists, and the case is not within the statute of frauds.   *Thornburg* v. *Burke,* 3 Leading Cases in Eq. 624; 21 Cal. 93; *Ruhling* v. *Hackett,* 1 Nev. 360; 8 Nev. 147; 15 Cal. 291.   A mortgagee, after receiving his debt, is considered as a trustee for the mortgagor.   Hilliard on Mort. 359; *Pierce* v. *Robinson,* 13 Cal. 116.

II.   When possession is taken by the mortgagee after condition broken by consent of the mortgagor, it will be presumed in the absence of clear proof to the contrary, to be with the understanding that the mortgagee is to receive the rents and profits, and apply them to the debt secured; and unless a limitation of the period of possession is fixed at the time, it will be considered as extending until the satisfaction of the debt.   *Dutton* v. *Warschauer,* 21 Cal. 609.   A court of equity will enforce a trust against all persons who, with notice of the trust, come into possession of the trust property, in the same manner and with like effect as against the original trustee.   *Lathrop* v. *Beaupton,* 31 Cal. 17.   The fact that the party receiving the conveyance of land, verbally agreed at the time with the person paying the consideration, that the former should on demand execute to the latter a conveyance of the premises, does not make the trust express, as distinguished from one implied by law from the act of the parties, so as to exclude proof of it by parol under the

operation of the statute of frauds.  *Breyler* v. *Baxter*, 22 Cal. 575–6.

III.  The debt secured by the mortgage (in form an absolute deed) could be enforced by foreclosure, in an action commenced at any time within four years from the date of the mortgage, or from the maturity of the debt as secured. *Millard* v. *Hathaway*, 27 Cal. 146 ; 40 Cal. 120 ; *Henry* v. *Confidence Co.*, 1 Nev. 622 ; *Mackey* v. *Lansing*, 2 Nev. 302.

IV.  The claim for the value of permanent improvements cannot be maintained and was correctly disallowed by the court.  Taylor's Landlord and Tenant, 448.  A lessee cannot bind his landlord by an agreement with a sub-lessee to pay for improvements thereon without his consent.  No agreement on the part of Cookes to pay for any improvements is shown.  There is a clear distinction between necessary repairs and permanent improvements.

V.  Defendant was not an innocent purchaser : he had ample notice that the deed was a security for money loaned.  The findings are conclusive "that this defendant had full knowledge * * * within ten days after the deed was executed by Piper to Geller, that said deed was executed, and said property was held by the said Geller as a security for the payment of said sum of $1,750 and interest by plaintiff to said Geller."  This finding is fully sustained by the testimony.

By the Court, BELKNAP, J. :

This action is brought for equitable relief and an accounting of the rents and profits of certain real property conveyed to defendant by deed, absolute upon its face, but which complainant alleges was intended as a mortgage.  In the year 1868 the complainant was the lessee of an unimproved town lot in Reno.  He erected buildings thereon of the value of $2,000, retaining the right to remove them in

case of his failure to purchase the lot for $1,750 before the expiration of his lease. The lease and privilege of purchase would have expired July 20, 1870. Two days prior thereto, being in straightened circumstances, he borrowed this amount from one Geller for the purpose of effecting the purchase. A misunderstanding appears to·have arisen in regard to the price. Complainant, however, made the purchase for $1,750 cash, and the additional sum of $500, for which Geller and himself gave their promissory note. A conveyance, absolute in form, but intended and treated by the parties as a mortgage, was taken in the name of Geller for the $1,750 thus loaned. This money Geller obtained from defendant, giving a note therefor payable in ninety days. On the 16th day of May, 1871, Geller conveyed the property to the defendant. The transfer is thus explained by Geller: He was about changing his residence from Reno to the State of California. Complainant had failed to re-pay him the loan of $1,750, and defendant still held the $1,750 note against him (Geller). Wishing to avoid possible annoyance from distant debtor or creditor he conveyed the property by deed absolute to defendant, who was fully advised of the equitable interest of complainant. Defendant thereupon surrendered Geller's note with the understanding that the rents of the property amounting to $135 per month were to be applied to the indebtedness secured by the deed; and upon full payment a re-conveyance should be made to Geller or complainant. Defendant maintains and testifies that the deed was taken and the note surrendered in settlement of Geller's indebtedness without notice of complainant's rights.

The district court found that the defendant took the conveyance with knowledge of Geller's relation to the property and as security for $1,750 and accrued interest. The property in question consists of several tenements, one of which, the Capital Saloon, the complainant occupied as owner from

the year 1868 until he relinquished possession to the defendant's lessee on the first day of May, 1871. There is a conflict of testimony as to the manner in which defendant obtained possession. He contends that he entered into possession as absolute owner of the premises; complainant, on the other hand, asserts that defendant agreed to rent the tenement in question for $125 per month, and that this sum and the rent of another of the tenements amounting to ten dollars per month, were to be applied to Geller's indebtedness. The defendant, from his own testimony, did not agree with Geller until the 15th day of May, 1871, to take the property. His possession, then, before this time must have been that of lessee or trespasser; he could not have possessed it in his own right.

Contemporaneous with defendant's occupation of the Capital Saloon the defendant moved a stock of liquors therefrom to an adjoining tenement of the property and engaged in business there from July 6 to October 1. Upon closing his business in the last mentioned tenement, known as the Echo Saloon, he leased it and collected rent therefor. No rent was paid by him or demanded from him, nor was he ever asked to account for rents received from his lessee. Two rooms costing complainant $250 were constructed by him in the upper portion of the Capital Saloon building and occupied by himself and family to the day of trial, for which no rent was paid or claimed. Exclusive of this he expended about $400 in improving the property. His occupation and improvements were subsequent to May 16, 1871, the date of the conveyance, and were known to defendant.

J. C. Jones, a witness for complainant, testified that in the year 1871 he was indebted in a certain sum to one Martin. The debt was secured by a conveyance of real property. Martin demanded payment, and early in June, 1871, the witness endeavored to obtain a loan from defendant, whom he proposed to substitute for Martin. The defendant

declined making the loan, remarking that he had exhausted his ready money in accommodating Cookes (complainant) and Geller in the same way. The witness said : "In the conversation with Culbertson I proposed to him to take a deed and relieve Martin. He then stated he had the Capital Saloon in the same way as I offered my property. He said Geller was owing him, and he took a deed of the property from Geller as security. He did not state the amount of money the security was for, but stated the interest per month to be between forty and fifty dollars. He also spoke of a lease he had of the Capital Saloon. The lease, he said, was for one year, but I cannot say whether the lease was from Geller or Cookes. He stated he agreed to pay $125 per month for the saloon and that received from some other source—ten dollars per month—in all it was $135 per month, which was to be applied on his debt." Upon cross-examination the witness said: "I asked him (defendant) if he thought Cookes would ever wiggle out of debt. He said, yes, in two years the property would pay for itself in rents ; that anything over the interest was to apply on the principal of the debt." Further the witness said: "I am pretty certain Culbertson said he had the property as security for money loaned at two and one-half per cent. per month. He stated that he would rather have his money than the property in that way." Culbertson testifies that the conversation with Jones occurred about May 7, instead of early in June. If Culbertson's is the correct date he did not have a deed of the property at the time of the interview. He fixes the date by the improvements that were being made upon the property ; Jones, by the date of his payment of Martin's loan and the re-conveyance of the mortgaged property, which occurred late in June, and two weeks after the interview. In no other respect, however, does their testimony conflict. Here is Culbertson's entire testimony upon this point: "Talked with J. C. Jones about May 7, about

letting him money. This was at the time improvements were going on. Did not tell him I had a deed as security at that time. Told him I was about making a bargain for the purchase of the property; had no deed at that time."

The taxes upon the property were delinquent in December, 1871. The defendant paid them, remarking at the time that complainant should have paid them. If either Geller or defendant owned the property, why should complainant have paid the taxes? No explanation of this circumstance was offered. Upon cross-examination, defendant admitted that in the spring of 1871 he gave complainant the refusal of purchase of the property for one year. The defendant's offer to thus deprive himself and bestow upon complainant the advantage of any advance in the value of the property for one year is irreconcilable with want of knowledge of his equities. If the legal and equitable title were in defendant, the offer thus made was void for want of consideration, and within the statute of frauds. We must presume that the proposition was valid and an admission of complainant's equities, and not an idle and insensible proposition, incapable of enforcement. These circumstances, fully established and in no wise controverted, except as stated, are strongly corroborative of the evidence adduced in support of complainant's case, and justify the finding of the district court of knowledge of his equities on the part of defendant in taking the deed.

The loan from Geller to complainant of July 18, 1870, is not evidenced by writing nor was a day fixed for its payment. It, therefore, became due immediately; and as this suit was commenced against the successor in interest to Geller subsequent to July 18, 1872, the statute of limitations was interposed as a bar, upon the theory that the rights of mortgagor and mortgagee being reciprocal and the statute having run against an action upon the debt, the mortgagor had no remedy upon the mortgage. The *remedy* upon the debt is

barred by the statute, but the *debt* was not thereby extinguished; and as the statute of limitations of this State applies to suits in equity as well as actions at law, the creditor could have enforced payment by foreclosure of the mortgage within four years after the cause of action accrued. He had two remedies, one upon the debt, the other upon the mortgage; by losing one he does not necessarily lose the other. *Lord* v. *Morris,* 18 Cal. 482; *White* v. *Sheldon,* 4 Nev. 280; *Henry* v. *Confidence Co.,* 1 Nev. 619; *Mackie* v. *Lansing,* 2 Nev. 302.

Upon the accounting the defendant was denied a credit of $1,000 for improvements made by his lessee. A mortgagee in possession is entitled to allowance for necessary and proper repairs, but he will not be credited with costly improvements, though the value of the estate be increased thereby, unless made with the mortgagor's consent. The law will not compel the debtor to pay for improvements he may not have desired and which might place the estate beyond his power to redeem. Where, however, beneficial improvements are made in good faith under the belief of absolute ownership, they are allowed. We have already determined that the improvements in this case were not made under such belief, nor are they shown to have enhanced the value of the estate. The questions of allowance for the management of the estate, and of tender, were not made below, and cannot be considered here.

Judgment affirmed.