[No. 1276.]

WARREN SHOECRAFT, RESPONDENT, v. S. M. BEARD, ET
AL., APPELLANTS.

ACTION TO REDEEM PERSONAL PROPERTY FROM LIEN OF CHATTEL MORT-
GAGE—LIMITATION OF ACTIONS.—The statute of limitations does not
begin to run against an action by the mortgageor of chattels to redeem
until the possession of the mortgagee becomes adverse, although an
action for the debt secured is barred.

COSTS—DISCRETION OF TRIAL COURT.— A judgment for costs in favor of
plaintiff in an action to redeem under a chattel mortgage is proper,
although he is decreed to pay a large sum upon such redemption, which
he did not tender before suit; defendants having unsuccessfully resisted
the action on the plea of the statute of limitations, and refused to render
an account of their claim after repeated demands.

APPEAL from the District Court of the State of Nevada, Elko
County.

R. R. BIGELOW, District Judge.

The facts are sufficiently stated in the opinion.

*Talbot & Farrington,* for Appellant.

I.   The rights of the parties are to be clearly distinguished
from the rights which would have accrued to them had the
transaction been a trust.

The mortgagee's possession is adverse as soon as he enters for
condition broken, and the statute of limitations then commences
to run against the mortgageor's equity of redemption.   The pos-
session of a trustee of an express trust does not become adverse
until the trustee repudiates the trust, and claims the estate as
his own, and asserts his equitable rights.   Then the statute
begins to run against the *cestui que trust.*   (Wood Lim. 447; 2
Perry on Trusts, Secs. 863, 864; *White* v. *Sheldon,* 4 Nev. 288;
Ang. Lim., Sec. 466; Herr. Chat. Mort., Sec. 457; *Wright* v. *Ross,*
36 Cal. 433.)

II.   The statute of limitations begins to run against the mort-
gageor's equity of redemption and in favor of the mortgagee in
possession at once upon the maturity of the debt, and is fully
barred by the lapse of the statutory period requisite to bar the
debt which it was given to secure.   (Wood Lim., Sec. 233; Boone
Mort., Sec. 302; *Huntington* v. *Mather,* 2 Barb. 538; *Heyland* v.

*Badger,* 35 Cal. 404; *Dewey* v. *Bowman,* 8 Cal. 145; Story Bail., Sec. 362.)

III.   A tender after default will not divest the title of the mortgagee in possession, nor will it enable the mortgageor to bring any of the common law actions, if redemption is refused. (*Bryant* v. *Carson R. L. Co.,* 3 Nev. 313; 93 Am. Dec. 403; *Wilson* v. *Brannan,* 27 Cal. 258; *Bragelman* v. *Daue,* 69 N. Y. 69 Freem. Ex. Sec. 117; Drake Att., Sec. 539; 2 Story Eq., Sec. 1031; Her. Mort. 446; *Judson* v. *Easton,* 58 N. Y. 664; *Brown* v. *Bement,* 8 Johns. 96; *Patchin* v. *Pierce,* 12 Wend. 62; *Post* v. *Arnot,* 2 Den. 344, 356; *Langdon* v. *Buel,* 9 Wend. 80.)

IV.   That there is a right to redeem after default in cases of chattel mortgages has not yet been clearly settled, nor is it universally admitted.   (*Taber* v. *Hamlin,* 97 Mass. 492; 93 Am. Dec. 113; 2 Hill. Mort. 50; *Burtis* v. *Bradford,* 122 Mass. 131; *Bryant* v. *Carson R. L. Co.,* 3 Nev. 313; 93 Am. Dec. 403; Red. Bail., Sec. 662.)

V.   Those authorities which do admit an equity of redemption in the mortgageor of chattels after default, hold that such right must be exercised within a reasonable time.   (*Boone Mort.,* Sec. 271; 2 *Sto. Eq.* Sec. 1031; *Wilson* v. *Brannan,* 27 Cal. 269; *Blodgett* v. *Blodgett,* 48 Vt. 32; *Lavigne* v. *Naramore,* 52 Vt. 267; *Jones Chat. Mort.* 687.)

VI.   The statute of limitations begins to run against a cause of action as soon as the cause of action accrues.   (Gen. Stat. 3629.)   The money was due at the time the bill of sale was executed and delivered, May 16, 1879.   Then the statute began to run against the right to collect the debt.   (*Fuller* v. *Acker,* 1 Hill. 475; *Espinosa* v. *Gregory,* 40 Cal. 58; *Estate of Galvin,* 51 Cal. 215; *Dorland* v. *Dorland,* 66 Cal. 190; Wood Lim., Sec. 233; Ang. Lim., Secs. 94, 95; *Cookes* v. *Culbertson,* 9 Nev. 207; *Huntington* v. *Mather,* 2 Barb. 538; *Roberts* v. *Sykes,* 30 Barb. 173.)   The same rule applies to mortgages of real property. (*Jones Mort.,* Sec. 1152; *Wood Lim.,* Secs. 235, 224, 225, 222; *Cunningham* v. *Hawkins,* 24 Cal. 403; 85 Am. Dec. 73; *Miner* v. *Beekman,* 42 How. Pr. 46; *Crawford* v. *Taylor,* 42 Iowa, 260; *Waldo* v. *Rice,* 14 Wis. 286.)

VII.   Under our statute a parol acknowledgment is not sufficient to stay the running of the statute against the mortgageor's right to redeem.   (Gen. Stat. 3660; *Miner* v. *Beekman,* 42 How. Pr. 46; *Wood Lim.,* Sec. 225.)

VIII.   An action to redeem from the lien of a mortgage is one of exclusive equitable cognizance.   The relief sought is not provided for in any of the various sections of the practice act limiting the time for the commencement of actions.   Hence it comes within the statute which provides that actions " for relief not hereinbefore provided for, must be commenced within four years after the cause of action shall have accrued."   (Gen. Stat. 3648; *Piller* v. *Southern Pac. R. R. Co.*, 52 Cal. 42, 44; *Cunningham* v. *Hawkins*, 24 Cal. 403; 85 Am. Dec. 73.)   Since the right of the Beard Bros. to foreclose was barred when this action was commenced, by the lapse of nearly seven years, therefore the right of Shoecraft to redeem was gone also.   ( *Wood Lim.*, Sec. 233; *Huntington* v. *Mather*, 2 Barb. 538.)   This rule has been repeatedly affirmed in cases involving the right to redeem from a real estate mortgage.   (2 *Hill Mort.*, Sec. 2; 1 *Pow. Mort.*, 335 a; *Grattan* v. *Wiggins*, 23 Cal. 16; *Espinosa* v. *Gregory*, 40 Cal. 58; *Taylor* v. *McClain*, 60 Cal. 651; *Henderson* v. *Grammar*, 66 Cal. 336; *Raynor* v. *Drew*, 72 Cal. 307; *Jones Mort.*, Sec. 1146; *Crawford* v. *Taylor*, 42 Iowa, 260; *Giles* v. *Baramore*, 5 Johns. Ch. 553; *Locke* v. *Caldwell*, 91 Ill. 418; *King* v. *Meighen*, 20 Minn. 264; *Waterman* v. *Brown*, 31 Pa. St. 163.)

IX.   While real estate mortgages have been, by the statute, reduced to the status of mere liens, there has been no legislation affecting the character of the rights acquired under such a chattel mortgage.   (Gen. Stat. 3284; *Code Civ. Pro. Cal.*, Sec. 744; *Jones Chat. Mort.*, Sec. 699; *Stewart* v. *Slater*, 6 Duer, 99; *Raynor* v. *Drew*, 72 Cal. 307.)

X.   The plaintiff is not entitled to costs.   As a general rule the complainant pays costs to the defendant on a bill to redeem, although he ultimately obtains the relief prayed for.   (*Phillips* v. *Hulsizer*, 20 N. J. Eq. 308; 2 *Jones Mort.*, Sec. 1111; *Boone Mort.*, Sec. 167; *Brockway* v. *Wells*, 1 Paige Ch. 617; *Detillin* v. *Gale*, 7 Ves. 583; *Turner* v. *Johnson*, 95 Mo. 431; 6 Am. St. Rep. 62.) The defendants cannot be deprived of their costs because they have overstated the amount due them.   (*Sessions* v. *Richmond*, 1 R. I. 298.)   If the defendants are held to be in fault, the plaintiff also being in fault, a court of equity will not give the plaintiff his costs. (*Saunders* v. *Frost*, 5 Pick. 271; 16 Am. Dec. 394; *Righter* v. *Stall*, 3 San. Ch. 612; *Woodward* v. *Phillips*, 14 Gray, 132.)

*J. W. Dorsey*, for Respondent.

I. The statute of limitations is interposed upon the theory that the right of mortgageor and mortgagee being reciprocal, and the statute having run against an action on the debt, the mortgageor can have no standing in court.

It is true the *remedy* of appellants was barred by the statute, but the *debt* was not thereby extinguished. (*Cookes* v. *Culbertson*, 9 Nev. 207.)

Relief in equity, *ex equo et bono*, will only be granted on payment of the whole debt. " He who seeks equity must do it." *Raynor* v. *Drew*, 72 Cal. 307; *Reed* v. *Landsdale*, Hardin, (Ky.) 8.)

The statute of limitations could not be set in motion for the protection of appellants until they ceased holding the horses as security and claimed absolute ownership. (*Hancock* v. *Franklin Ins. Co.*, 114 Mass. 156; *Jones* v. *Thurmond*, 5 Tex. 318.)

II. The same reasons that induced courts of equity to interfere in relief of a mortgageor of realty, have operated to relieve a mortgageor of chattels. (Jones Chat. Mort., Sec. 681.)

The title of the mortgagee after default is no greater than it was before, and the right of redemption exists until destroyed by some aggressive movement instituted for that purpose by the mortgagee, or lost through *laches* so persistent and extended as to render the right too stale for equitable enforcement. (Her. Chat. Mort. 190-4; *Locke's Ex.* v. *Palmer*, 26 Ala. 325; *Heyland* v. *Badger*, 35 Cal. 414.)

III. Foreclosure is, as to redemption, the converse and generally the reciprocal remedy, whereby the mortgagee may acquire an absolute title to the encumbered property. (Her. Chat. Mort., Secs. 14, 192, 209.)

But if the sale be non-judicial it must be *bona fide*, free from any suspicion of fraud or sacrifice, and the surplus must be accounted for. (Her. Chat. Mort., Sec. 195.)

In equity the mortgagee is only regarded as holding the legal title as collateral security. (*Hannah* v. *Carrigan*, 18 Ark. 101; *Glass* v. *Ellison*, 9 N. H. 69.)

A chattel mortgage is not a sale, absolute or conditional, but is a pledge. It does not vest an absolute title, but is a mere security. Consequently all the law applicable to pledges

applies with equal reason to mortgages of this character. (Her. Chat. Mort., Secs. 15 a, 198.)

IV. The period within which redemption must be made is to be counted from the beginning of the mortgagee's *adverse possession.* (Jones Chat. Mort., Secs. 367, 368, 687, 688; 2 Stor. Eq. Ju., Sec. 1031.)

V. The acts of the mortgagee in possession, to have the effect of converting the amicable into an adverse, independent holding, should be direct, unequivocal and overt. (*Overton* v. *Bigelow,* 3 Yer. 513; *Yarbrough* v. *Newell,* 10 Yer. 381; *Fenwick* v. *Macey's Ex.,* 1 Dana, (Ky.) 277; *Ballinger* v. *Worley,* 1 Bibb, 198; Sto. Bail., Secs. 346-7.)

By the Court, HAWLEY, J.:

This action was commenced January 7, 1886, to redeem certain personal property from the lien of a chattel mortgage executed May 16, 1879. The cause was tried before the court without a jury. The court found " that on the sixteenth day of May, 1879, the plaintiff was the owner of about twenty-six head of horses, described in the complaint; * * * on that day he delivered them to defendants as security for the payment of the sum of three hundred and seventy-nine dollars, to be paid by the plaintiff; that the defendants took possession of the horses, and have kept possession of them ever since;" that in May, 1880, the defendants, at plaintiff's request, paid for wintering the horses; the defendants paid the taxes thereon from 1880 to 1886, inclusive, without any request from plaintiff; also paid out money for other services, and were entitled to other named expenses for the care and keeping of said horses; " that up to about May 1, 1885, the defendants at all times admitted that said horses were the property of the plaintiff, and up to that time they held them simply as security for the payment of the sum due to them from the plaintiff; but since on or about said May 1, 1885, they have claimed to be the absolute and full owners of the same, and they have, during that time, held them adversely to the plaintiff and all other persons." As conclusions of law, the court found " that, the plaintiff is the owner of said horses, and that his title thereto is not barred by the statute of limitations, nor is his right to the possession so barred;" " that, upon the plaintiff paying to the defendants the

sum ·of one thousand seven hundred and nineteen dollars and twenty-nine cents (the amount found to be due,) he will be entitled to the possession of said horses and all of them, with all of their increase," and entitled to recover his  costs and disbursements in this action.

At the request of defendants the court found the following additional findings: "That on or about the ————— day of November, 1878, the plaintiff was indebted to one James in the sum of one hundred and ninety-six dollars, and that on said day plaintiff executed and delivered to said James a bill of sale of about eighteen head of horses, * * * to secure the payment of said sum of one hundred and ninety-six dollars; that said bill of sale was intended as a mortgage, and as security for the payment of said one hundred and ninety-six dollars; that on the sixteenth day of May, 1879, the plaintiff was also indebted to defendants in the sum of one hundred and seventy-nine dollars which was then due; that on said May 16, 1879, it was mutually agreed between said James, plaintiff, and defendants, that defendants should pay said James the amount then due him, * * * and that said horses with their increase, should be delivered to defendants, to hold as security for the sum of two hundred dollars, so paid by them to James, and also for the further sum of one hundred and seventy-nine dollars, then due from plaintiff to defendants; that in pursuance of this agreement the defendants paid James two hundred dollars, and he executed a bill of sale to them, and the horses were delivered accordingly, all on the sixteenth day of May, 1879; that said last-mentioned bill of sale was intended as a mortgage, and was a mere security for the payment of the said sum of three-hundred and seventy-nine dollars, and defendants were to hold said horses simply as a security for the payment thereof; that at the time of the execution and delivery of the said last-mentioned bill of sale, there was nothing said about when the said three hundred and seventy-nine dollars should be paid, except such as may be inferred from the execution and delivery of said bill of sale, and the transfer of said horses; that while defendants have admitted that said last-mentioned bill of sale was intended as a mortgage, and that they only held said horses as security for the money so due them, and for the amount due them for the care thereof, they have only admitted so verbally, and said admissions have not at any time been in

writing; that during the year 1882, and up to the commencement of this action, the plaintiff has frequently demanded from defendants a statement of the items and amounts which they claimed against said horses for their care and expense of keeping them, and of which he was ignorant, to enable him to redeem them, but they refused to make such statement, stating to the plaintiff that he could redeem them by paying a gross sum, largely in excess of the amount justly due them, and for which they would give no items; that at none of the times during 1882, and up to the commencement of this action, when the plaintiff demanded of the defendants an itemized account of their claims against the horses described in the complaint, did plaintiff tender any sum in satisfaction of such account; that plaintiff had no money at such times, to make such a tender; that, in reply to such demands, plaintiff was informed by defendants that it was impossible to make out such an itemized account, but that plaintiff might have said horses by paying a stated sum, varying on successive occasions from one thousand five hundred dollars, in 1882, to two thousand five hundred dollars, in 1885."

1. When does the statute of limitations, in a case like this, begin to run? Does it begin to run from the time the debt, which the mortgage is given to secure, is due, as claimed by appellants, or only from the time when the mortgagee's possession became adverse, as claimed by respondent? At common law, upon breach of the conditions of a chattel mortgage, the title to the property became absolute in the mortgagee, and no right of redemption remained in the mortgageor. The harshness and manifest injustice of this rule, as applied in many cases, induced courts of equity to adopt the rule—more in consonance with sound reason and justice—that a mortgagee should not, upon a failure of the mortgageor to comply with the conditions of the mortgage, be regarded as having the absolute legal title, but as holding it merely as collateral security for the payment of the debt due from the mortgageor. Herman, after reviewing this question at great length, says: "We can therefore arrive at but one conclusion, and that is that a chattel mortgage is neither a sale absolute nor conditional; neither is it more than a pledge, or an absolute pledge; neither does it vest an absolute title in the mortgagee; but that a chattel mortgage, like a real-estate mortgage, is nothing but a mere

security,—a lien upon the property therein described, which the mortgagee may himself, or by an agent, sell for the satisfaction of his debt; and until so sold, or the mortgageor's title is foreclosed, does not vest it in the mortgagee for any other purpose except that of satisfaction. Were it otherwise, the mortgageor would have no right of redemption after default." (Herm. Chat. Mort. 196, p. 471.) If appellants had desired to extinguish respondent's right of redemption, they could have done so at any time after default in the conditions of the mortgage, by a foreclosure of the mortgage, or by selling the property after giving due notice to the mortgageor. Not having pursued this course, it follows that, as long as the right of redemption existed, a tender of payment of the debt and expenses, after default in the conditions of the mortgage, would be equivalent to a tender at the time mentioned in the mortgage. In several of the states the time within which the right of redemption must be exercised is expressly provided for by statute, and where this is the case the redemption must, of course, be made within the time specified, or the title of the mortgagee becomes absolute. In other states it has frequently been held that although the conditions of the mortgage have not been fulfilled, there exists, as in mortgages of land, an equity of redemption which may be asserted by the mortgageor if he brings his bill to redeem within a reasonable time. In *Bryant* v. *Carson R. Lumbering. Co.*, 3 Nev. 318, 93 Am. Dec. 403, this court said: " For a reasonable time after breach of the condition of the mortgage, and while the property remains in the possession of the mortgagee, the courts of equity have uniformly, upon a proper application, allowed a redemption by the mortgageor." This principle is too well settled to require any further citation of authorities.

The question as to what is a reasonable time within which a bill to redeem may be brought depends, to a great extent, upon the circumstances of each particular case, but it may, as a general rule, be determined, where there is no statute upon the subject, by analogy to the statute of limitations applicable to actions at law for the recovery of personal property. As long as appellants, the mortgagees in this action, held the property under and by virtue of the mortgage relation, the right of redemption could not be cut off. (Her. Chat. Mort., 194–196; *Raynor* v. *Drew*, 72 Cal. 307.) The fact that the mort-

gageor might, at the time this action was brought, have pleaded the statute of limitations against an action to recover from him the amount of the debt, does not affect the question at issue in this case. The remedy upon the debt may be lost by lapse of time, but the debt is not thereby extinguished. (*Cookes* v. *Culbertson*, 9 Nev. 207; *Hancock* v. *Franklin Ins. Co.*, 114 Mass. 156.) The rights of the parties were reciprocal, notwithstanding the fact that the right of action upon the debt was barred by the statute of limitations. The mortgagees could still enforce their lien under the mortgage, and the right of redemption existed in the mortgageor until appropriate proceedings were taken by the mortgagees, to cut it off. Applying the principles we have announced to the facts of this case, it necessarily follows that the statute of limitations did not begin to run against respond_ent's equity of redemption until the possession of appellants became adverse. (1 Jones Mort. 688; Boone Mort. 271.) The conclusions arrived at by the court upon this subject were correct.

2. Did the court err in allowing respondent his costs and disbursements? The question of allowing costs was within the discretion of the court. This discretion will not be disturbed unless it manifestly appears that there was palpable error or clear abuse of the discretion. Ordinarily, in actions of this character, the plaintiff, although successful, is required to pay the costs; but there are recognized exceptions to this rule. (Boone Mort., Sec. 167, and authorities there cited.) The mere fact that appellants claimed more than the court allowed for expenses might not, of itself, have justified the court in taxing them with the costs. But they did more. They not only refused to render to the mortgageor any itemized account of their expenses in taking care of the horses, so as to enable him to decide as to the merits of their claim, but denied his right to recover the property. Having contested the case upon the ground which they were unable to sustain, that respondent's cause of action was barred by the statute of limitations, it was certainly within the discretion of the court to tax the costs against them. The rule upon this subject is well stated in *Vroom* v. *Ditmas*, 4 Paige Ch. 535, as follows: "As a general rule, a party coming into this court to redeem pays costs to the defendant, although he succeeds in obtaining the relief asked for, unless the defendant has improperly resisted his claim; in which latter

case the defendant will not only be refused his costs, but may be compelled to pay costs to the complainant, in the discretion of the court." (*Davis* v. *Duffie*, 18 Abb. Pr. 360.)    The judgment of the district court is affirmed.