[No. 2445]

## THE STATE OF NEVADA, RESPONDENT, v. JOHN BACHA, APPELLANT.

[194 Pac. 1066]

1. CHATTEL MORTGAGES—BILL OF SALE ON AUTOMOBILE TO SECURE LOAN HELD MORTGAGE, AND NOT CONDITIONAL SALE.

   A transaction by which a party secured a loan by a bill of sale on his automobile *held* not a conditional sale, but a mortgage, and where the car had passed into the mortgagee's possession, the mortgagor had a right of redemption, which he could not cut off by contract with the mortgagee.

2. CHATTEL MORTGAGES—PROVISION THAT PROPERTY SHALL BECOME MORTGAGEE'S HELD NOT TO CUT OFF REDEMPTION.

   An agreement by which the owner gave the lender a bill of sale of an automobile to secure a loan, providing that the property should become the mortgagee's absolutely on failure to pay the indebtedness, cannot be construed to pass title as under an ancient common-law mortgage, but leaves the mortgagor an equity of redemption.

3. FALSE PRETENSES—REPRESENTATION OF OWNERSHIP OF AUTOMOBILE IN WHICH DEFENDANT HAD ONLY EQUITY OF REDEMPTION IS FALSE.

   Where a defendant, prosecuted for obtaining money under false pretenses, gave a mortgage on an automobile then in possession of another holding under a bill of sale to secure a former loan, notwithstanding the defendant had an equity of redemption in the former mortgage, *held*, that his representation as to ownership constituted a false pretense.

4. CHATTEL MORTGAGES — MORTGAGEE ENTITLED TO POSSESSION ON DEFAULT.

   Where defendant was in default on a first mortgage on an automobile, the mortgagee was entitled to possession of the machine, and could extinguish the right of redemption by foreclosure or sale after notice.

5. FALSE PRETENSES—JURY COULD CONSIDER DEFENDANT'S FAILURE TO TELL PROSECUTING WITNESS CERTAIN FACTS.

As bearing on the question of knowledge and intent of defendant, accused of false pretenses in representing that he was the owner of an automobile, the jury could consider the fact that he told the complaining witness nothing whatever concerning his transaction with a third person to whom he had given a bill of sale of the car as security for a loan.

6. FALSE PRETENSES—NEED NOT BE SOLE INDUCEMENT FOR PARTING WITH PROPERTY.

A false pretense need not be the sole inducement for the victim of a fraudulent representation to part with his money or thing of value, but it is sufficient if the defrauded party was materially influenced by the false pretense to part with his property, although other motives may have operated to produce the result.

7. CRIMINAL LAW—WITNESS'S STATEMENT THAT HE RELIED ON HIS OWN KNOWLEDGE AN OPINION.

The statement of the complaining witness in a prosecution for false pretenses that he relied on his own knowledge of defendant's ownership of an automobile was merely the expression of an opinion.

8. FALSE PRETENSES—FALSE PRETENSE OF OWNERSHIP OF AUTOMOBILE HELD TO HAVE INDUCED COMPLAINING WITNESS TO MAKE LOAN.

Although complaining witness had reason to believe from the conduct of defendant and his wife with reference to an automobile that it belonged to the defendant, *held* that without defendant's false representation that it still belonged to him when in fact he had only an equity of redemption therein, the complaining witness would not have made a loan secured by a mortgage on the car.

9. FALSE PRETENSES—PRETENSE HELD SUFFICIENT TO DECEIVE ONE OF ORDINARY INTELLIGENCE AND PRUDENCE.

Where defendant had been the owner of a car, and the complaining witness had seen it in his possession, but did not know that defendant had then only an equity of redemption in the car, and upon defendant's false pretense of ownership loaned him money, taking a mortgage on the car, *held*, that the false pretense was calculated to deceive one of ordinary intelligence and business prudence into parting with money without making further investigation so that the defendant would be liable criminally.

APPEAL from Second Judicial District Court, Washoe County; *Thomas F. Moran,* Judge.

John Bacha was convicted of obtaining money by false pretenses, and he appeals from the verdict and

judgment, and from the order denying his motion for a new trial. **Affirmed.**

*Moore & McIntosh,* for Appellant:

The pretenses made by the defendant must be false; he must know such pretenses to be false, and the defendant must make such false pretenses with the express intention, at the time they are made, to defraud. Before conviction can be had, these facts must be proven beyond a reasonable doubt. "The false pretenses alleged must have been the sole and actuating cause or pretense which moved or caused the complaining witness to loan the money as alleged in the information." 5 Crim. Def. 300, 385.

When the means are at hand whereby a complaining witness may inform himself of the truth or falsity of statements made in a business transaction, it is his duty so to do. "It is not the policy of the law to punish as a crime the making of every foolish or ill-considered agreement; if it is, the jails and prisons must be greatly enlarged. Where the pretense is absurd or irrational, or such as the party injured had, at the very time, the means of detecting at hand, it is not within the act." State v. Cameron, 23 S. W. 767; State v. Crane, 38 Pac. 270; Commonwealth v. Grady, 26 Am. Rep. 192. "The statutes against obtaining money * * * under false pretenses ought not to be so interpreted as to include cases where the party defrauded had the means of detection at hand." Wharton, Crim. Law, vol. 2, sec. 2129; Fay v. Commonwealth, 28 Grat. 912.

*L. D. Summerfield,* District Attorney, and *W. M. Kearney,* Assistant District Attorney, for Respondent:

"Although the pretense must be an inducing cause of the owner's parting with his property, it need not be the sole inducing cause; it is sufficient if it had a material influence in inducing the owner to part with his property, although he was also influenced in part by

other causes." 19 Cyc. 407; People v. Weir, 120 Cal. 279.
Where the negligence of the prosecutor alone, unmixed
with other considerations, is interposed as a defense, it
is immaterial. This defense arises in connection with
the character of the pretense, and is decided under the
rules governing that branch of the subject. 19 Cyc. 418;
Elmore v. State, 158 Ala. 50; People v. Smith, 3 Cal.
App. 62; Whitaker v. State, 75 S. E. 258; People v.
Crawford, 278 Ill. 134; Broan v. State, 62 Tex. Cr. 592;
State v. Hooker, 170 Pac. 374.

The weight of reason and authority is to the effect
that the prosecutor's negligence is no defense.

The facts in the case do not show any negligence on
the part of the complaining witness. His making the
loan under the circumstances, without any investigation,
was a perfectly reasonable act. The question as to
whether or not he was negligent is one of fact for the
jury. 2 Wharton, Crim. Law, 11th ed., sec. 1455.

By the Court, DUCKER, J.:

The appellant was convicted of the crime of obtaining
money by false pretenses. He appeals from the verdict
and judgment and from the order of the court denying
his motion for a new trial. The statute which the
appellant was convicted of violating provides:

"Every person who shall knowingly and designedly,
by any false pretense or pretenses, obtain from any
other person or persons any chose in action, money,
goods, wares, chattels, effects, or other valuable thing,
with intent to cheat or defraud any person or persons
of the same, shall be deemed a cheat, and on con-
viction shall be imprisoned in the state prison not
more than ten years nor less than one year, and be
sentenced to restore the property so fraudulently
obtained, if it can be done; *provided,* that should the
value of any chose in action, money, goods, wares, chat-
tels, effects, or other valuable thing so, as aforesaid,
fraudulently obtained, not exceed in value the sum of
fifty dollars, every person so offending shall be deemed a

cheat, and on conviction shall be imprisoned in the county jail not more than six months, or be fined in any sum not exceeding five hundred dollars, or by both such fine and imprisonment, and be sentenced to restore the property so fraudulently obtained, if it can be done." Rev. Laws, 6704.

A number of errors are specified, but the only one urged on this appeal is that the verdict is contrary to the evidence. The facts are substantially as follows:

In the early part of January, 1917, in the city of Reno, the appellant, who was then the owner of a five-passenger Chalmers automobile, borrowed $500 from one Julia Cowan. At the same time he gave her a note and a bill of sale of the car as security for the loan. The money was loaned for a period of six months at 1 per cent per month interest. It was understood between them that appellant was to retain the possession of the car and could use it during that period, which he did. Julia Cowan was a witness for the state and testified that at the time of the transaction it was agreed that, if the money was not repaid within six months, the car was to pass into her possession and become her property. She is corroborated as to her version of the agreement by one Corecco, one of the proprietors of the garage where appellant kept his car, who was present at the time of the transaction. He was also a witness for the state, and in respect to this part of the transaction testified that it was agreed between Julia Cowan and appellant that, if he did not pay the $500 within six months, she could have the car on the bill of sale. The appellant was a witness on his own behalf, and in respect to this part of the transaction testified that it was agreed that he was to use the car and sell it at any time, and that she was to keep the bill of sale until he paid her; that the car was to be his all the time, and after the six months was up he would have the right to sell the car if he desired.

Appellant never paid Mrs. Cowan the amount borrowed from her, or any part of it. The interest on the amount

to July 1 was paid by the appellant. In July, 1917, and after six months had expired, she demanded payment of the appellant several times, and finally told him that she was going to take possession of the car and that she claimed the ownership of it. On July 20, 1917, she went to the garage and told Corecco that she had taken possession of the car and that the car belonged to her and that she did not want him to let the car go out of the garage without her permission. She also requested him to remove a wheel from the car, which was done. She testified that from that time on to and during the month of September, 1917, she had possession of the car; that during the month of September, 1917, the appellant knew that she had possession of the car, for the reason that he came to her several times and wanted to borrow the car, but she would not consent to it. On the 10th of October, 1917, Julia Cowan sold the car to one Coughlin. Corecco corroborated Julia Cowan as to her coming to the garage about the 20th of July, 1917, and instructing him and his brother not to let the car go out of the garage. The former testified that instructions were given to the night man not to let the car go out of the garage under any circumstances. He also testified that he had no knowledge of the car going out of the garage from July 20 until it was sold to Coughlin, except when he and his brother had it out for demonstration purposes, in trying to sell the car for Julia Cowan. Appellant testified that he had the car out and used it frequently from the 20th of July until about three or four days before he left Reno for San Francisco, on the 30th day of September, 1917; that he did not ask permission of any one to take the car out of the garage. He also testified that Julia Cowan did not tell him not to use the car until about three or four days before he left Reno. There is evidence tending to show that he purchased gasoline and oil at the Corecco garage during the period intervening between the 20th of July and his departure from Reno.

On the 18th of September, 1917, appellant borrowed $200 from one Ray Reese in Reno and gave him a thirty-day note and a chattel mortgage on the car to secure the loan.

Reese had known appellant in Reno for several years. He knew that appellant had a five-passenger Chalmers automobile and had seen him driving around town on different occasions. They had kept their cars at the same garage. Reese had met appellant at the garage with his car and had never seen him with any other car. When appellant borrowed the money from Reese, the former did not tell him of the transaction with Julia Cowan in which he borrowed $500 from her and gave a bill of sale of the car. When the appellant offered to mortgage the car, Reese asked him where the car was, and he said it was over at the garage. Appellant asked Reese not to record the mortgage, but the latter had it recorded notwithstanding. There was a telephone in Reese's place of business where the transaction took place and also one at the Corecco garage, but Reese did not call up the garage or go over there to ascertain if appellant had a car there before loaning him the money. Reese testified, in substance, that he would not have loaned appellant the money if he had not offered him a mortgage on his car; that it was the sole inducement to make the loan; that the only representation appellant made to him was that he would give him a mortgage on his car; that in making the loan he relied upon appellant's statements, and therefore did not telephone over to the Corecco garage or go over there to look at the automobile.

Counsel for appellant contends that no false pretense was made, and that, before a conviction can be sustained, it must be proven that the pretense was false; that appellant knew it to be false, and that he intended at the time thereby to defraud the complaining witness. The contention that there was no false pretense made by the appellant is based upon the assumption that the bill of

sale given by appellant was in effect a chattel mortgage. Consequently it is urged that at the time he obtained the money from the complaining witness he still had the right to redeem the car from Mrs. Cowan by paying her the amount due her; and that this right gave him an equity in the car which he could lawfully mortgage as security for the loan from Reese.

1. Counsel for the state insist that the transaction was a conditional sale, and that Mrs. Cowan's title to the car became absolute when appellant failed to make payment as agreed. The testimony clearly shows the nature of the transaction. Surely the mere agreement that the car was to "pass" into the possession of Mrs. Cowan in case of nonpayment did not stamp the transaction as a conditional sale, in the face of her undisputed testimony that she loaned the money at interest and took the bill of sale and note as security for the loan. The only inference to be drawn from the agreement that the car was to pass into her possession in case of the nonpayment of the indebtedness when it fell due was that she might foreclose the mortgage loan. The evidence of Mrs. Cowan stamps the transaction as a mortgage, and nothing could convert it into a conditional sale. The maxim "once a mortgage, always a mortgage," applies to this case, and the mortgagor cannot cut off his right to redeem by an agreement entered into simultaneously with the execution of the mortgage to relinquish all claim to the mortgaged property upon his failure to pay the debt secured at maturity. Jones on Chattel Mort., sec. 682.

2. We do not think that it was the intention of the parties that the transaction should ever be deemed other than a mortgage; but, if it was, considerations of public policy should move us to refuse to sanction such a transaction. If such an agreement is upheld, then virtually the ancient common-law mortgage would be still in vogue, its rigors unrelieved by an equity of redemption.

It may be said to be axiomatic that no force will be

given to a provision in a mortgage or simultaneously entered into by which the mortgagor agrees that, in case of his failure to promptly pay the indebtedness secured, the mortgagee shall become the absolute owner of the property. 27 Cyc. 1098. The rule is laid down in 19 R. C. L. 502, as follows:

"The right and equity of a mortgagor to redeem, as has been heretofore seen, was regarded as an inseparable incident to a mortgage. Courts of equity, applying the doctrine 'once a mortgage, always a mortgage,' refused to permit the parties to a transaction intended as a mortgage to give the transaction any other character. And so deeds, absolute in form, if intended as mortgages, were construed as such, giving the grantor a right to redeem. Furthermore, the mortgagor cannot by any agreement, contemporaneous with the transfer of his property, however explicit or forceful, bind himself not to assert his right and equity to redeem."

See, also, Holden & L. S. Co. v. Interstate T. Co., 87 Kan. 221, 123 Pac. 733, L. R. A. 1915D, 492.

3. But, notwithstanding that the bill of sale was intended as a chattel mortgage, the pretense made to the complaining witness was nevertheless false. He made no pretense of offering an equity in the car to the complaining witness as security for the loan. The representation was he would give him a mortgage on his car which he had at the garage. It was the plain import of such a representation that he was the owner of the car which he had in his possession, and not merely entitled to an equity in it. We do not mean the representation necessarily conveyed the idea that he had a perfect title, but it was certainly calculated to assure the complaining witness that he had the right of possession, and that he owned something more than a mere right of redemption in the car which could be extinguished by the mortgagee at any time.

4. The appellant was in default on his mortgage obligation when he made the representation and had no right to the possession of the car. The mortgagee

was entitled to the possession of the car and could have extinguished his right of redemption at any time by a foreclosure of the mortgage, or by selling the car without foreclosure, after giving him due notice. Shoecraft v. Beard, 20 Nev. 182, 19 Pac. 246.

Appellant virtually represented himself, in procuring the loan of $200, to be the owner of the automobile. By this representation the mortgagee had the right to assume that the appellant enjoyed the right of exclusive possession of the car and the privilege of doing with it as he wished.

5. The representation was a sufficient false pretense to constitute an element of the offense. There is ample evidence to sustain the verdict as to the elements of knowledge and intent on the part of the appellant. And as to these elements, the jury had a right to consider in connection with other evidence bearing upon them, that appellant told the complaining witness nothing whatever of his transaction with Julia Cowan.

6. It is contended that the false pretense alleged was not the sole actuating cause which induced the complaining witness to loan the money as alleged in the information. Counsel for appellant grounds this contention upon the testimony of the complaining witness to the effect that, before appellant represented to him that he would give him a mortgage on his car which he had over at the garage, he knew that appellant owned such a car, and relied also upon this knowledge in making the loan. But in this connection it must be noted that the complaining witness also stated that he relied upon appellant's statement, and therefore did not telephone over to the garage. We consider the contention to be extremely technical. Moreover, it is not true, as a matter of law, that the false pretense must be the sole inducement for a victim of a fraudulent representation to part with his money or thing of value. It is sufficient if the defrauded party was materially influenced by the false pretense to part with his property, although other

motives may have operated to produce the result. 19 Cyc. 407, and other cases cited to support the text; 2 Bishop's New Criminal Procedure. The law is well established that the false pretense need not have been the only inducement.

7, 8. The statement of the complaining witness that he relied upon his own knowledge of the appellant's ownership of the car, and also upon the representation made, is, at the most, merely the expression of an opinion. The real fact of the matter must in most cases be deducible from the circumstances of the particular case; for, where there is a combination of causes, operating to cheat a person of his property, he cannot always know with certainty how it was. In this case, while the complaining witness had reason to believe from the conduct of appellant and his wife with reference to the car that the car belonged to him, it is obvious without the representation from which he could reasonably conclude that appellant was still the owner and in possession of it, he would not have parted with his money. This is the only logical inference the jury could draw from the circumstances, and they were properly instructed in this regard.

9. We have next to consider the contention which appellant makes that, before his conviction can be sustained, it must appear that the pretense alleged must have been sufficient to have deceived a man of ordinary intelligence and business prudence, and that, if the complaining witness, by the exercise of ordinary care and prudence, could have protected himself from the deception, his failure to do so is a defense to the action. The first branch of the contention requires only a brief comment. The false pretense in this case is not of the character held by some authorities, including the cases of State v. Crane, 54 Kan. 251, 38 Pac. 270, and State v. Cameron, 117 Mo. 641, 23 S. W. 767, cited by counsel for appellant, insufficient to support a conviction. In this case it was fully calculated to deceive. As to the

latter branch of the contention, it is urged that prior to the transaction the complaining witness knew appellant owned the automobile and kept it at the same garage where the witness kept his machine, which was only a short distance from the place where the transaction occurred; that there was a telephone connection between the two places, and, therefore, his failure to make any inquiry or effort to ascertain the facts concerning the ownership of the car relieves the appellant of criminal responsibility.

The doctrine that negligence and lack of precaution on the part of the complaining witness constitute a defense to the charge of obtaining money by false pretenses is supported by the case of Commonwealth v. Grady, 13 Bush (Ky.) 285, 26 Am. Rep. 192, cited by appellant, and by other cases. But this rule is opposed to the great weight of modern authority, and with reason. In 11 R. C. L. 835, the matter is thus stated:

"Although this rule [minority rule] has been applied in some cases, chiefly to early ones, the courts are now generally agreed that the defendant's guilt does not depend upon whether the victim could, with reasonable diligence, have ascertained that the representations were false. When all the circumstances evince that the representation was made designedly, with an intent to cheat, and was calculated to deceive and capable of defrauding, the prisoner cannot excuse himself by saying that if the victim had been sharp, vigilant, and astute, he could have detected the fraud by using the means of detection available to him."

As pointed out in the same text, the courts adhering to the minority rule seem to have disregarded the purpose of the statutes denouncing the offense of obtaining money or property by false pretenses, and to have carried into the realm of criminal law the rule of civil actions of deceit that, when a person had at hand the means of investigating the false representations, and might have determined their falsity by the exercise of

ordinary prudence, he will not be heard to say that he was deceived.

The purpose of the statute is to punish for dishonesty, and to protect persons from fraudulent representations which might induce them to part with their property. This purpose would be largely frustrated if the owners of property having the opportunity for investigating the false pretense were without the protection of the statute. Criminals wary enough under such a state of the law to confine their activities to this class of persons would be furnished with complete immunity in their nefarious calling.

We can conceive of cases in which the false pretense could be of such an absurd character that for a person of ordinary intelligence to act upon it and part with his property without an investigation, when the means of ascertaining the deception were at hand, would suffice to bring the case without the purview of the statute. But this is not a case of that kind. There was nothing absurd or irrational in the representation made to the complaining witness. It is not unreasonable for him to conclude that appellant was the owner of the car and had possession of it at the garage where he formerly kept it. Under the facts as disclosed by the evidence, no duty rested upon him to take the time and trouble to make an investigation to verify appellant's representation. Therefore to permit the appellant to shift the responsibility of his deception to the injured party would do violence to the spirit of the statute and countenance a wrong.

The judgment of the trial court should be affirmed; and it is so ordered.