The State v. Cameron.

---

THE STATE v. CAMERON, *Appellant*.

Division Two, November 9, 1893.

1. **Criminal Law:** FALSE PRETENSES: INDICTMENT. An indictment
charged, in substance, that the defendant and his codefendants repre-
sented themselves as agents of a lightning rod company and desired
to contract with R. to rod his house, and agreed to give him one hun-
dred feet of rod and to charge him only for their labor and for the
excess of rod over one hundred feet, and assured him that the
expense would not be more than $5, and it was further averred that
R. was induced to sign a contract by which he obligated himself to
pay $195 instead of only $5. *Held*, that the indictment charged no
offense.

2. ———: ———: ———. Where the pretense relied on to support the
crime is absurd' or irrational or such as the party injured had at hand
at the very time the means of detecting, it does not constitute a crimi-
nal offense.

*Appeal from Montgomery Circuit Court.*—Hon. E. M.
HUGHES, Judge.

REVERSED.
VOL. 117—41

*W. S. Pope* and *Creech & Martin* for appellant.

(1) The motions to quash and in arrest should have been sustained. It is difficult to determine whether it was intended to charge defendant under section 3654 or 3780 or 3826 of the Revised Statutes of 1889. This case falls within *State v. Terry*, 109 Mo. 601; see, also, *State v. Porter*, 75 Mo. 171. (2) The judgment should be reversed because of the many errors of the trial court in admitting and excluding evidence. (3) The demurrer to the evidence ought to have been sustained as to defendant, as well as to Meeks, because the offense attempted to have been charged was not proved. *State v. Hunt*, 91 Mo. 490. (4) The trial court erred in instructing the jury in this, that the first instruction given is a comment on the testimony. It was calling the attention of the jury to certain facts in evidence and certain parts of the evidence. Revised Statutes, 1889, sec. 4220; *State v. Handley*, 46 Mo. 414; *State v. Smith*, 53 Mo. 267. (5) The instruction given at the instance of the prosecuting attorney is open to the same objection, and then enlarges on the charge in the indictment by the use of the words, "a cheat, or a fraud, or a trick, or a deception," or "confidence game," none of which words are in the indictment. These are words of the statute under which he was tried, not the words of the indictment. (6) The instructions asked by defendant are correct propositions of law, based on a good indictment under section 3826. The instructions asked by the state, and given after the argument commenced, is clearly erroneous, for the reason that defendant was on trial on a charge based on section 3826, and not 3780 for conspiracy.

*R. F. Walker*, Attorney General, for the state.

(1) The indictment informs the defendant of the nature and cause of the accusation against him, and

clearly charges the crime in language and form often approved by this court, and is not subject to the criticism suggested by appellant's motion to quash, which was properly overruled. Revised Statutes 1889, sec. 3826; *State v. Fancher*, 71 Mo. 460; *State v. Porter*, 75 Mo. 171; *State v. Crooker*, 95 Mo. 389; *State v. Clay*, 100 Mo. 571; *State v. Morgan*, 20 S. W. Rep. (Mo.) 456; *State v. Jackson*, 20 S. W. Rep. (Mo.) 624; *State v. Horn*, 93 Mo. 190; *State v. McChesney*, 90 Mo. 120; *State v. Bayne*, 88 Mo. 604; *State v. Connelly*, 73 Mo. 235; *State v. Dennis*, 80 Mo. 590; *State v. Williams*, 77 Mo. 311. (2) The evidence that defendant had defrauded, cheated and swindled other persons in the same locality and by use of the same means, false and fraudulent representations, was clearly admissible. *State v. Bayne*, 88 Mo. 604; *State v. Meyers*, 82 Mo. 558; *State v. Sarony*, 95 Mo. 349; *State v. Beaucleigh*, 92 Mo. 490. (3) The other objections to testimony are trivial. They were general, with no specific reasons assigned, and in many instances no exceptions to the action of the court in overruling them were saved. (4) The instructions correctly declare the law applicable to the case, under the indictment and the testimony. (5) Defendant, in his motion for a new trial, further alleges as error, "that the trial was proceeded with in defendant's absence; that defendant was not permitted to meet his accusers face to face;" improper remarks of the prosecuting attorney. These complaints, if true, should have been made at the time. It is too late to first suggest them in his motion for new trial. Again, the allegation in the motion for new trial is no evidence of the fact that they actually occurred. (6) The unsupported statement in defendant's motion for new trial, that Andrew Meyers, one of the jurors, did not know that the verdict returned by them was guilty, but understood it was not guilty, can avail defendant

nothing. A juror cannot be heard to impeach his verdict. The juror, however, makes no such an attempt.

GANTT, P. J.—The count in the indictment on which defendant was convicted is as follows:

"The grand jurors for the state of Missouri, duly impaneled, charged and sworn to inquire within and for the body of the county of Lincoln, and state of Missouri, upon their oath do charge and present that, on or about the twenty-fourth day of April, A. D. 1891, at the county of Lincoln, and state of Missouri, A. Q. Cameron, C. A. Meeks and F. J. Web, being then and there in an unlawful conspiracy, combination, confederation and agreement among themselves, with the intent to cheat and defraud Hansford Richards of his money and property, did then and there in the prosecution and furtherance of said unlawful conspiracy, confederation, combination and agreement, feloniously and designedly, with the intent to· cheat and defraud said Hansford Richards, falsely pretend to the said Hansford Richards that they, the said A. Q. Cameron, C. A. Meeks and F. J. Web, were in the neighborhood of the said Hansford Richards representing a certain lightning rod company, to these grand jurors unknown, and that for the purpose of advertising in his, the said Hansford Richards, neighborhood, they, the said A. Q. Cameron, C. A. Meeks and F. J. Web, could and would give the said Hansford Richards a great bargain, if he, the said Hansford Richards, would allow them, the said A. Q. Cameron, C. A. Meeks and F. J. Web, to put lightning rods on his, the said Hansford Richards,' dwelling house, saying that they would give the said Hansford Richards one hundred feet of rod, free and without charge, as a special inducement for him, the said Hansford Richards, to allow them, the said A. Q. Cameron, C. A. Meeks and F. J. Web, the privilege

of rodding his, the said Hansford Richards,' dwelling house; that the said A. Q. Cameron, C. A. Meeks and F. J. Web then and there cautioned the said Hansford Richards to say nothing to his neighbors about the special and exceptional bargain, they, the said A. Q. Cameron, C. A. Meeks and F. J. Web, had given him; that they could only afford to do this with him, the said Hansford Richards, on account of its being such a good and successful means of advertisment to the people of the said Hansford Richards' neighborhood, and for the further consideration the said Hansford Richards was to allow them, the said A., Q. Cameron, C. A. Meeks and F. J. Web, to bring the said Hansford Richards' neighbors and such other persons as they pleased to his house, so that his neighbors and other persons could examine the lightning rods and their work, and satisfy themselves as to the kind of material and class of work the said A. Q. Cameron, C. A. Meeks and F. J. Web did, telling the said Hansford Richards that they were only going to charge him for the actual cost of the labor required in putting the lightning rod on his said dwelling house, and for the few extra feet of rod that it might take over and above the said one hundred feet of lightning rod they had given him without cost as aforesaid, and that the entire expense, including all charges for lightning rods and labor should not cost the said Hansford Richards more than five dollars in any event. And that the said Hansford Richards, believing the said false pretenses and fraudulent representations so made as aforesaid to be true, and being deceived thereby, was induced by reason thereof to sign a contract which the said A. Q. Cameron, C. A. Meeks and F. J. Web, then and there feloniously and designedly with the intent to cheat and defraud him, the said Hansford Richards, did falsely pretend and represent to said Hansford Richards

that his putting his signature to the said written contract was to obligate the said Hansford Richards for the payment of the said sum of $5, and only the said sum of $5, whereas, in truth and in fact the said A. Q. Cameron, C. A. Meeks and F. J. Web were not representing any lightning rod company, and as a matter of fact and truth they did not rod the said Hansford Richards dwelling house as a means of advertisement in said Hansford Richards' neighborhood or community, as aforesaid, and the said Hansford Richards putting his said signature to said written contract did not obligate him to pay the sum of $5 and no more, but to the contrary, the putting of his, the said Hansford Richards' signature, to the said written contract, as aforesaid, then and there obligated and bound him, the said Hansford Richards, for the payment of $195 of the United States, and of the value $195 and of the goods and chattels of the said Hansford Richards, and that the said A. Q. Cameron, C. A. Meeks and F. J. Web, by means of the false pretense and fraudulent representations so made to the said Hansford Richards as aforesaid, unlawfully, feloniously and designedly did then and there obtain of and from the said Hansford Richards the said sum of $195, lawful money of the United States, of the value of $195 of the goods and chattels of the said Hansford Richards, and that the said A. Q. Cameron, C. A. Meeks and F. J. Web then and there well knew that the said false pretenses and fraudulent representations so made as aforesaid were false and untrue, against the peace and dignity of the state.''

The indictment was filed September 24, 1891, and a change of venue granted to Montgomery county.

The defendants, Cameron and Meeks, filed a motion to quash for the reasons, among others, that the said count of said indictment does not charge the said

defendants with any offense against the laws of the state of Missouri, because said count in said indictment does not charge that the money obtained was obtained by false and fraudulent representations; because there is no connection with the payment of the money by Hansford Richards and the false and fraudulent representations made by defendants charged in said count. The motion to quash was overruled and defendant duly excepted.

Stripped of all immaterial averments, the charge in this indictment is simply that the defendant and his codefendants represented themselves as agents for a lightning rod company, and desired to contract with the prosecuting witness, Richards, to rod his house, agreeing to give him one hundred feet of rod, and to charge him only for their labor and the excess over the one hundred feet, and assuring him that it would not amount to more than $5. It is then averred that he was induced to sign a contract by which he was obligated to pay $195 for rodding his house instead of $5 only.

The contract is nowhere set out, but it is alleged *it was in writing.* There is no averment that Richards could not, or *did not, read* the contract, nor is there any averment of any fraudulent trick or device by which he was prevented from reading the contract before he signed it. It is not pretended that defendant failed to do the work. On the contrary, Richards says when it was finished, defendant produced the contract, estimated the work, and found it came to $195, and he paid him the cash therefor without protest.

It is charged that the promise of defendant was that the extra work over the one hundred feet should not exceed $5, and yet when the written contract was presented to Richards to sign, by which he was obligated to pay *$195* for the work, no reason is given for his signing it. It is not averred that he was so ignor-

ant he could not read the writing, or that he was blind, or that he was shown one paper and, by a trick, induced to sign another.    The slightest attention on his part to the ordinary methods of transacting business, especially between strangers, would have enabled him at once to discover the contract called for more than he had agreed to pay, and he could have declined to sign it; but more than this, when called on to pay, if the contract had been fraudulently procured, he could have retained his money in his pocket, but with a full knowledge that the defendant claimed the contract called for the $195, and with no concealment on defendant's part of this claim, he paid that amount.

It is not the policy of the law to punish as a crime the making of every foolish or ill-considered agreement. If it is, the jails and prisons must be greatly enlarged. "Where the pretense is absurd, or irrational, or such as the party injured had, *at the very time*, the means of detecting *at hand*, it is not within the act." *Com. v. Hutchinson*, 2 Par. (Pa.) Sel. Equity Cas. side p. 309; *Buckalew v. State*, 11 Tex. App. 352; *Com. v. Grady*, 76 Ky. 285.

The very essence of this crime is that the injured party must have relied upon some false or deceitful pretense or device and parted with his property. *Fay's case*, 28 Gratt. 912; *Trogdon v. Com.* 31 Gratt. 862; *Regina v. Mills*, 7 Cox C. C. 263. How can it be said that Richards relied upon the truth of the statement that he had agreed to pay defendant $195, when he, of all men, knew he had only agreed to pay $5. It was not necessary for him to inquire of anyone, he knew the statement was false, and he could not have relied upon it.    Knowing it was false, he was not deceived by the contract into paying his money.

The indictment is wholly insufficient to sustain this conviction, and the motion to quash should have been

sustained. It becomes unnecessary to examine the other assignments. The judgment is reversed and the prisoner discharged. All concur.