## THE STATE OF KANSAS v. STUB CRANE.

CRIMINAL CONSPIRACY—*Information*—*Evidence*. An information for criminal conspiracy charged the defendant, C., and his codefendant, G., with having obtained from one M. a promissory note for $150 on account of a lightning rod put up on M.'s house, on the representation that it would cost $7.50 only. After the rodding was completed, M. was induced by C. to sign a written contract by which he obligated himself to pay $150. Subsequently, with full knowledge of all the facts, he executed the note of $150 to G. for the amount of the contract. *Held*, That the information, and evidence offered in support thereof, were insufficient to support the conviction, when it was not averred in the information that M. was so ignorant that he could not read the contract, or that he was blind, or that he was shown one paper, and by trick induced to sign another, and when it further appeared from the information and evidence that M., before signing the note, had found out that G. was a fraud, and with full knowledge of all the facts executed the note, for the reason that G. stated to him that he could make his defense to the note better than to the written contract.

*Appeal from Rush District Court.*

On the 7th day of April, 1894, an information was filed in the district court of Rush county, which, omitting caption, verification, and indorsements, was as follows:

"I, H. L. Anderson, the undersigned county attorney of said county, in the name and by the authority and on behalf of the state of Kansas, come now here and give the court to understand and be informed, that on the 20th day of February, 1893, in the county of Rush and state of Kansas, one Stub Crane and one J. C. Gray did then and there, unlawfully, feloniously, designedly, and with the intent to cheat, wrong and defraud one John Marquardt, then and there conspired together to obtain and procure the said John Marquardt to sign and deliver to them his promissory note in writing for $150, with interest on the same at 10 per cent, per annum from date; that in pursuance of the said conspiracy the said Stub Crane, on the 20th day of the said month of February, 1893, went to the residence of the said John Marquardt, in the said county of Rush and in the said state of Kansas, and represented to the said John Marquardt that he, the said Stub Crane, was the duly authorized agent of F. H. Miller & Co. to sell and put up lightning rods, and if the said John Marquardt would allow him, the said Crane, to sell to him and put up lightning rods to the house of the said John Marquardt, the same would only cost the said John Marquardt at the rate of 75 cents per foot for the excess of 100 feet of rod put up, and that it would only take 110 feet of rod for his house, and that the same would only cost him, the said John Marquardt, the sum of $7.50; that, relying upon the said statements of the said Crane, and believing them to be true, the said John Marquardt permitted the said rod to be so put up to his house, and signed a contract, as he thought, and as was represented to him by the said Crane, binding him to pay the said sum of $7.50, and took a copy of the said contract for himself; that the said Marquardt discovered soon after the said Crane had gone away that the said contract bound him to pay for said lightning rod the sum of $150, instead of the said sum of $7.50, as it should have done under his agreement with the said Crane; that on the 21st day of February, 1893, the said J. C. Gray, the co-conspirator of the said Stub Crane, went to the residence of the said John Marquardt

and represented to him, the said Marquardt, that he, the said Gray, was the attorney of the said F. H. Miller & Co. and would take the said Marquardt's note in payment for the said lightning rod, and that, if the said Marquardt had a defense to said claim, the defense would be better presented against the said note than against the said contract; that he would take the said note in the name of the said F. H. Miller & Co., and that he would send the said· Crane to see the said Marquardt on the next day to adjust the matter with the said Marquardt, and that by the said statements of the said Gray the said Marquardt signed the note of $150, and delivered the same to the said J. C. Gray, and delivered to him, the said Gray, the copy of the said contract, believing the statements of the said Gray, and relying upon said statements that when the note was signed it would be better to deliver up the contract for the use of the said F. H. Miller & Co.; that all of the said statements and pretenses of the said Stub Crane and the said J. C. Gray, the said John Marquardt relied upon and believed them to be true, and was induced to sign the said contract and the said note under and by reason of the said statements and pretenses of the said Stub Crane and the said J. C. Gray; that all of the said statements and pretenses made to the said John Marquardt by the said Stub Crane and J. C. Gray were false and fraudulent, and that the said Stub Crane and the said J. C. Gray knew the aforesaid statements and pretenses to be false at the time they were made to the said Marquardt by the said Stub Crane and the said J. C. Gray; that by and through the said false and fraudulent statements and pretenses, the said Stub Crane and the said J. C. Gray obtained the signature of the said John Marquardt to the said contract and the said note for the said amount of $150, dated February 21, 1893, due in three months from date thereof; that instead of taking the said note payable to the said F. H. Miller & Co., as they had falsely and fraudulently represented and pretended to the said John Marquardt they would do and had done, the said Stub Crane and the ·said J. C. Gray falsely, knowingly and fraudulently took the said note fraudulently from the said John Marquardt payable to the said J. C. Gray himself; that the said note is of the value of $150 — all contrary to the statute in such cases made and provided, and against the peace and dignity of the state of Kansas.     H. L. ANDERSON, *County Attorney."*

On April 10, 1894, the defendant, Stub Crane, filed his motion to quash the information, upon the ground that it did

not state facts sufficient to constitute a public offense under the statute of the state. This motion was overruled. Trial had at the April term of the court for 1894, before the court with a jury. On April 17, 1894, the jury rendered a verdict against the defendant of guilty, as charged in the information. On April 18, 1894, the defendant filed his motion to set aside the verdict and for a new trial, upon the various statutory grounds. On the same day he filed his motion in arrest of judgment, upon the ground that the facts stated did not constitute a public offense. Both of these motions were overruled, and the defendant was sentenced, upon the verdict of the jury, to be confined in the state penitentiary for the term of four years, commencing with the 27th day of April, 1894, and it was also adjudged that he pay the costs of prosecution, taxed at $150.10. To all the various rulings and the sentence of the court, and to the judgment rendered, the defendant excepted. He appeals.

*J. W. Deford, W. A. Deford,* and *McCormick & McKee,* for appellant:

1. The district court erred in overruling the motion to quash. The information does not state facts sufficient to constitute a public offense. See *In re Schurman,* 40 Kas. 542; *The State v. Ripley,* 31 Me. 386, 389; *The State v. Crowley,* 41 Wis. 271, 22 Am. Rep. 719; *Hazen v. Commonwealth,* 23 Pa. St. 353, 363; *The State v. Bradley,* 68 Mo. 140.

2. Not only was there no conspiracy charged, but the information does not contain a single false pretense alleged against either Crane or Gray. It does not accuse either of them of having stated any past or existing fact to Marquardt to get from him the contract, much less the note. Everything uttered by them was a mere prophecy, promise or legal or other opinion. *In re Snyder,* 17 Kas. 556.

3. The statements made by Gray to Marquardt, as the information affirms, to obtain the note, were not false pretenses. " In this class of cases, good pleading requires that each distinct and material allegation should be directly and specific-

ally negatived." Indeed, no averment in the information is so negatived. *The State v. Palmer*, 50 Kas. 322, 323.

4. The court repeatedly erred in the admission of evidence, over the defendant's objections.

The state failed to establish a *prima facie* conspiracy of Crane and J. C. Gray to obtain the signature of Marquardt to the note alleged to have been obtained by unlawful means. The evidence of the statements of Gray was admitted before such a basis was laid. It is the ruling of this court that "ordinarily, when the acts and declarations of one co-conspirator are offered in evidence against another co-conspirator, the conspiracy itself should be established *prima facie* and to the satisfaction of the court or the judge trying the same." *The State v. Miller*, 35 Kas. 334. See, also, *Chapman v. Blakeman*, 31 Kas. 684.

5. The court below erred in the instructions it gave to the jury, and it also erred in denying the motion for a new trial.

6. To the question, "Tell the jury whether or not you believed and relied upon the statements which J. C. Gray made to you on the 21st day of February, 1893, at the time you signed the note which you delivered to him," Marquardt answered: "I could not say I did; I found out that he was a fraud." Marquardt waited more than a year, and until he was sued on the note, before he commenced this prosecution; and he began and is pursuing it as a bluff, to get out of paying a just debt, or out of mere spite. A lightning-rod case as like to this as one hen egg is like to another is *The State v. Cameron*, 23 S. W. Rep. (Mo.) 767.

The contract is nowhere set out, but it is alleged it was in writing. There is no averment that Richards could not or did not read the contract, nor is there any averment of any fraudulent trick or device by which he was prevented from reading the contract before he signed it. It is not pretended that defendant failed to do the work. On the contrary, Richards says when it was finished defendant produced the contract, estimated the work, and found it came to $195, and he paid him the cash therefor without protest.

It is not the policy of the law to punish as a crime the making of every foolish or ill-considered agreement. If it is, the jails and prisons must be greatly enlarged. See *Commonwealth v. Hutchinson*, 2 Par. Sel. Cas. 309; *Buckalow v. The State*, 11 Tex. App. 352; *Commonwealth v. Grady*, 76 Ky. 285.

The very essence of this crime is that the injured party must have relied upon some false or deceitful pretense or device, and parted with his property. *Fay's Case*, 28 Gratt. 912; *Trogdon v. Commonwealth*, 31 id. 862.

*John T. Little*, attorney general, *H. L. Anderson*, county attorney, for The State; *S. I. Hale*, of counsel:

The representation, statement and pretense of Gray, made to Marquardt on the 21st day of February, 1893, "that he was an attorney of F. H. Miller & Co.," was to an existing fact; the same "that he would take the note of Marquardt in settlement for the lightning rod, payable to F. H. Miller & Co.," when in fact he then had the note made payable to himself, was to an existing fact. These false pretenses, representations and statements of Crane as to existing facts, and the same made by Gray as to existing facts, blend with the false promise made by Gray to Marquardt, that he would send Crane the next day to adjust the matter. All these representations, pretenses and statements were made to Marquardt by Crane and Gray to accomplish a common purpose and design, namely, to induce him to place his signature to the note, and bring Crane clearly within the statute. 31 Vt. 279.

Each material allegation in the information is definitely and specifically negatived. The information specifically charges that Crane and Gray conspired together to accomplish a certain purpose; that each in furtherance of a common design, namely, to procure Marquardt's signature to the note, did certain things in furtherance of the common design and purpose. It states specifically what each one did; the means employed in furtherance of the design of the conspiracy,

which they had entered into prior thereto. It alleges that the conspiracy was entered into; that the common design was carried out; that the purpose was accomplished, and states the means employed by Crane and Gray to accomplish the common design and purpose. It specifically alleges that all of the representations, pretenses and statements made by Crane and Gray to Marquardt to induce him to sign the note were false and fraudulent; that by the making of these false and fraudulent statements, pretenses and representations he was induced to sign the note. It alleges that Marquardt relied upon and believed the statements, pretenses and representations made to him by Crane and Gray, and that believing the statements, pretenses and representations made to him by Crane and Gray he signed the note. Hence, we think the the information is sufficient. *The State v. Switzer*, 63 Vt. 604, 25 Am. Rep. 789; *State v. Mills*, 17 Me. 211; *Barton v. People,* 135 Ill. 405.

A glance at the following authorities, cited by the attorneys for the appellant, viz.: *In re Schurman*, 40 Kas. 542; *The State v. Crowley*, 41 Wis. 271, and *Hazen v. Commonwealth*, 23 Pa. St. 353, and *The State v. Cameron*, 23 S. W. Rep. 767, shows that not one of them is in point. This Missouri case, on which the attorneys for appellant seem to rely, was a case in which the defendant was prosecuted for obtaining a signature to a contract, and in this Missouri case it seems that the conspiracy to obtain the note was not fully consummated as it was in the case at bar. The defendant was not prosecuted for obtaining the signature to a note in this Missouri case; no conspiracy was alleged, and the law in that case is not applicable in this case.

The opinion of the court was delivered by

HORTON, C. J.: We have carefully examined the information and the evidence introduced to support its allegations. We think the information fatally defective and the evidence insufficient to sustain the conviction. The information attempted to charge Stub Crane and J. C. Gray with criminal

conspiracy in obtaining from John Marquardt his promissory note for $150. The note is not copied in the information, nor is it stated whether it was negotiable or not. The inference from the allegations is that it was not negotiable, because it was payable "to J. C. Gray himself," and not to order or bearer. (Gen. Stat. of 1889, ¶ 477; *McCrum v. Corby*, 11 Kas. 464.) It appears from the information that, in order to obtain the note for $150, Crane went to the residence of Marquardt on the 20th of February, 1893, and represented to him that he was the agent of F. H. Miller & Co. to sell and put up lightning rods, and that if Marquardt would purchase one he would put up a lightning rod on his house for 75 cents per foot for the excess of 100 feet of rod; that it would take 110 feet of rod for the house, and that the same would cost Marquardt $7.50 only; that Marquardt, at the instance of Crane, signed a contract in the rodding of his house which he thought bound him to pay $7.50. This contract was signed in duplicate, Marquardt retaining a copy. Soon after the lightning rod was put up by Crane, Marquardt ascertained he had signed a contract to pay $150, instead of $7.50. Gray, representing that he was the attorney of F. H. Miller & Co., offered to take the note of Marquardt in payment for the lightning rod, and informed him that if he had a defense to the claim he could present it against a note better than against the contract. He proposed to take the note of $150 in the name of F. H. Miller & Co., but actually took the note to himself. It is not averred in the information that Marquardt was so illiterate as not to be able to read, or that he was blind, or was shown one paper and by trick induced to sign another. With full knowledge that the contract called for $150, and not $7.50, he executed the note complained of. If he could read writing, he knew he was executing the note to J. C. Gray, and not to F. H. Miller & Co. The only past or existing facts stated by either Crane or Gray to Marquardt were immaterial matters, and those were not "directly and specifically negatived." (*The State v. Palmer*, 50 Kas. 322.) The matters represented by Crane and Gray to

Marquardt to happen in the future were not false pretenses within the statute. A mere promise is not sufficient. (*In re Snyder*, 17 Kas. 542.) Marquardt testified that he could not say that "he relied upon the statements made by J. C. Gray" on the 21st of February, 1893, at the time he signed the note, "because he had found out that he was a fraud." He further testified that Gray said, "if I did n't want to sign the note he was ready to leave;" that "the contract was more binding — no belief about it — more binding than the note, and I was fool enough to do what he said."

A case very similar to this was decided by the supreme court of Missouri on November 9, 1893 — *The State v. Cameron*, 23 S. W. Rep. 767. In that case, the agent assured the owner of the house that the rodding would not amount to more than $5. The owner signed a contract obligating himself to pay $195. Instead of giving a note, as in this case, he paid $195, when he knew he had agreed to pay $5 only. Gantt, J., delivering the opinion, observed: "It is not the policy of the law to punish as a crime the making of every foolish or ill-considered agreement. If it is, the jails and prisons must be greatly enlarged. Where the pretense is absurd or irrational, or such as the party injured had at the very time the means of detecting at hand, it is not within the act." The judgment is reversed, and the defendant discharged.

All the Justices concurring.