Argued 27 February, decided 3 April, 1906.

## STATE *v.* MILLER.

85 Pac. 81.

BANKING — INQUIRY AS TO RIGHT TO CERTIFY CHECKS.

1. Where an officer or employee of a bank draws or certifies commercial paper whereby the funds of such bank are to be used for his own benefit, the person receiving it is bound to inquire further as to the authority for so doing before relying on such act.

CRIMINAL LAW — FALSE PRETENSES — NEED OF RELIANCE ON REPRESENTATION — ELEMENTS OF OFFENSE.

2. In order to convict of a charge of obtaining money under false pretenses, under Section 812, B. & C. Comp., it must appear that the party charged intended to defraud the injured party and that the latter relied on the false representation believing it to be true.

For instance: A bank cashier who draws and certifies a check on his own bank, in exchange for which he receives something of value, cannot be convicted of obtaining property by a false token or pretense, where he told the person with whom he exchanged that he did not have money on deposit to pay the check, for there was no deception, and the injured person clearly did not rely on the genuineness of the check.

From Baker:  SAMUEL WHITE, Judge.

Roy H. Miller appeals from a conviction of obtaining money under false pretenses.     REVERSED.

For appellant there was a brief with oral arguments by *Mr. Charles Augustus Johns* and *Mr. William P. Lord.*

For the State there was a brief over the names of *Andrew Murray Crawford*, Attorney General, *Leroy Lomax*, District Attorney, and *Hart & Smith*, with an oral argument by *Mr. Crawford.*

MR. JUSTICE MOORE delivered the opinion of the court.

The defendant, Roy H. Miller, was convicted of the crime of obtaining money by false pretenses, and appeals from the judgment which followed, assigning as error, inter alia, the action of the court in refusing to instruct the jury, as requested, to return a verdict of not guilty.

It is argued by his counsel that the testimony shows that there was no intent on the part of the defendant to defraud the person from whom the money and property were obtained, and that such person never relied upon any alleged false pretense as a means inducing him to part with any of his property and hence an error was committed as stated.  The bill of exceptions discloses that on February 23, 1904, one A. P. Goss entered into a written contract with Miller whereby he stipulated to convey to the latter certain real property, in Sumpter, Oregon, with the buildings thereon, and also to transfer to him a business, known as the Bank of Sumpter, for $15,000, which sum, except $1,000 thereof, was to be retained by Miller, together with all the promissory notes and over-

drafts of the bank, as a trust fund with which to pay its creditors, whose debts were to have been discharged within two years, when the remainder of the uncollected notes and credits assigned to him, together with any part of the $14,000 unused, were to be returned to Goss! The testimony shows that Goss performed his part of the agreement by transferring the property of the Bank of Sumpter, the value of which was at least $10,000 less than its liabilities, receiving therefor Miller's personal check for $15,000, drawn on the First National Bank of Sumpter, of which he was then the cashier, and as such certified the order for the payment of the money. Goss immediately assigned the check to the Bank of Sumpter, of which Miller had taken charge, receiving credit for $1,000, which was subject to check, and a certificate of deposit for $14,000, which specified that it was "payable as per contract of this date." The testimony further shows that Miller operated the Bank of Sumpter until July 28, 1904, when he executed a deed and a bill of sale of all its property to one C. H. McCulloch, in trust for the creditors, and in a few days thereafter this bank suspended payment, thereby terminating its business.

The court certifies to the following statement contained in the bill of exceptions, to wit:

" There is no testimony which shows, or tends to show, that the defendant ever violated any terms or conditions of said contract in the collection of, or in the failure to collect, the assets of the bank, or that he failed or neglected to pay out and disburse any moneys or funds so collected according to the terms of the contract, or that he made any profit out of the transaction, or that he used a single dollar of any of the moneys of the bank, or the proceeds of any notes or other evidences of debt by him collected, or that he failed or neglected to account for and pay over any and all money which was turned over to him, or which was by him collected, according to the terms and conditions of the contract."

Goss, appearing as a witness for the State, was asked:

"Q. You may state to the jury whether or not the sale and transaction between you and the defendant Miller was a cash sale or transaction?"

And he answered: "It was."

"Q. And why did you accept it (referring to the check) as such, and why did you believe it to be genuine at that time, what if any circumstance led you to believe that?

A. It being attested by him as cashier, I thought it better.  *  *

Q. Now, Mr. Goss, you may state if you turned over to the defendant Roy Miller the property of the bank believing that, and relying upon the fact of the $15,000 check. which you testified to being a good, genuine and valid check?

A. I did.

Q. And upon what bank was it (referring to the check) given?

A. The First National Bank of Sumpter, Oregon.

Q. Where is the First National Bank of Sumpter, Oregon, with reference to the Bank of Sumpter?

A. About two blocks distant.

Q. Did you ever present that check for payment?

A. I deposited it in the Bank of Sumpter.

Q. Please answer the question, did you ever present that check for payment to the First National Bank of Sumpter?

A. I did not.

Q. And why didn't you do it?

A. Because it was the same as cash coming through there and was entirely unnecessary. They didn't have the cash to pay it, if I had called for it.

Q. Didn't you know, Mr. Goss, at the time you accepted that check that you couldn't go over to the First National Bank of Sumpter there and get the money on it?

A. That is right.

Q. You knew the money was not there with which to cash the check?

A. I was told it was not.

Q. Who told you?

A. Mr. Miller."

The bill of exceptions does not purport to contain all the evidence, but as the court instructed the jury that if they should find that Miller told Goss that there was not sufficient funds in the First National Bank of Sumpter to pay the $15,000 check, whereupon the latter insisted that it should be certified by Miller, who, " by reason of such insistence," complied therewith, and Goss thereupon accepted the check, believing that the attestation validated it, etc., it may be taken as granted that testimony to that effect was introduced at the trial.

In the ordinary course of the business of a bank, the certifying of a check imports that the drawee has funds of the drawer at the time, of which a sufficient sum shall be retained to meet the payment of the paper on presentation: *Farmers' & M. Bank* v. *Butchers' & D. Bank*, 28 N. Y. 425. The certifying of a check is equivalent to an acceptance of a bill of exchange, payable on demand, whereby the sum so specified is immediately transferred from the drawer's account, thereby making the bank primarily liable to a bona fide holder of the check for value: *Farmers' & M. Bank* v. *Butchers' & D. Bank*, 16 N. Y. 125 (69 Am. Dec. 678); *Meads* v. *Merchants' Bank*, 25 N. Y. 143 (82 Am. Dec. 331); *Bickford* v. *First Nat. Bank*, 42 Ill. 238 (89 Am. Dec. 436); *Farmers' & M. Bank* v. *Butchers' & D. Bank*, 14 N. Y. 623; *Merchants' Bank* v. *State Bank*, 77 U. S. (10 Wall.) 604 (19 L. Ed. 1008). An agent of a bank cannot bind it by false representations, of which it had no actual knowledge, when he was acting for himself: *National Bank* v. *Carper*, 28 Tex. Civ. App. 334 (67 S. W. 188). "It is elementary," says Mr. Justice Ladd, in *German Savings Bank* v. *Des Moines Nat. Bank*, 122 Iowa, 737 (98 N. W. 606), "that an agent cannot bind his principal, even in matters touching his agency, where he is known to be acting for himself, or to have an adverse interest." The private participation of a cashier in a transaction which may affect his princi-

pal is sufficient to put the other party upon inquiry as to the extent of the agent's authority, for a cashier has no implied power to dispose of the funds of a bank in payment of his own obligations: *Hier* v. *Miller*, 68 Kan. 258 (75 Pac. 77, 63 L. R. A. 952); *Rankin* v. *Bush*, 93 App. Div. 181 (87 N. Y. Supp. 539). Thus, a person cannot deal with a cashier of a bank as an individual in securing a draft, and after it has been delivered claim that its issuance has become the transaction of the bank: *Campbell* v. *Manufacturers' Nat. Bank*, 67 N. J. Law, 301 (51 Atl. 497, 91 Am. St. Rep. 438). So, too, where a cashier issues a draft to himself and delivers it to a broker, to be used in speculating, the latter is placed on inquiry as to the nature and ownership of the fund: *Mendel* v. *Boyd* (Neb.), 91 N. W. 860.

1. To give validity to negotiable paper, so as to facilitate its circulation, the rules of law impose upon a bank primary liability for certified checks drawn upon it by a depositor or customer, because such a transaction is the ordinary mode of doing business. Where, however, an agent of a bank draws a draft, payable to himself, or certifies a check which he issues, whereby the funds of the bank are or may be withdrawn for his benefit, the transaction is extraordinary, and before the bank can be rendered liable thereon, the person receiving such draft or check is bound to make inquiry from other officers of the bank in respect to the validity of the paper. Goss was a banker, and is presumed to know the law and customs applicable to the business in which he was engaged, and, this being so, he could not have depended upon any primary liability of the First National Bank of Sumpter as giving validity to the check which he knew was issued and certified by Miller, and hence his reliance must rest, if at all, upon the defendant's representations, express or implied, in respect to such paper.

2. The crime alleged to have been committed by Miller consists in his drawing a personal check on the First Na-

tional Bank of Sumpter in favor of Goss for the sum of $15,000, and certifying thereto as cashier of that bank, when he did not have the money on deposit therein. Our statute prohibiting such transactions is, so far as deemed involved herein, as follows:

"If any person shall * * by any privy or false token, and with intent to defraud, obtain * * from any other person, any money or property whatever, * * such person, upon conviction thereof, shall be punished," etc.: B. & C. Comp. § 1812.

An examination of this section will show that the phrase "any false pretense," as denounced in the statute, has been omitted from the excerpt quoted, because the specification of the particulars of the crime charged is limited to the issuance of a check as a privy token. Such token, however, is of the same class and subject to the same penalties as are prescribed for the use of a false pretense as a means of obtaining the money or personal property of another, and to all intents and purposes is a false pretense. In defining the latter term, the editors of the Encyclopedia of Pleading and Practice (volume 8, p. 857), say: "A false pretense is a false and fraudulent representation or statement of a past or existing fact, made with knowledge of its falsity and with the intent to deceive and defraud, by reliance upon which representation or statement another is induced to part with money or property of value." An analysis of this definition will show that in order to sustain the conviction herein, Miller must have issued the false privy token with intent to deceive and defraud Goss, who, relying upon the apparent validity of the check, which its issuance purported, he was thereby induced to part with his money and property. Mr. Wharton, in his work on Criminal Law (9 ed., vol. 2, § 1183), in commenting upon one of the necessary elements of false pretenses, says: "It is an essential ingredient of the offense that the party alleged to have

been defrauded should have believed the false representations to be true, for if he knew them to be false, he cannot claim that he was influenced by them." McClain in his work on Criminal Law (section 684), in discussing this question, says: "It must be shown both by the allegations and the proof that the false pretense was relied upon by the person parting with his money or property as the inducement thereto." Further in the same section this author observes: "And it must appear that the person to whom the pretenses were made believed them to be true, otherwise he would not be defrauded thereby." To the same effect see 12 Am. & Eng. Enc. Law (2 ed.), 820; 3 Current Law, 1419; 19 Cyc. 406; 2 Bishop, Crim. Law (7 ed.), § 462; Clark & Marshall, Crimes (2 ed.), § 365; Underhill, Crim. Ev. § 442.

The legal principle thus announced in these text books is amply supported by the adjudged cases. Thus, in *People* v. *Stetson*, 4 Barb. (N. Y.) 151, it was held to be an indispensable constituent of the crime of false pretenses that the party alleged to have been defrauded should have believed the false representations to be true, otherwise he could not claim that he was influenced by them. In *State* v. *Evers*, 49 Mo. 542, it was ruled that a conviction for obtaining money by false pretenses could not be upheld unless the indictment charged that the prosecutor believed the false pretense was true and that, confiding in the verity thereof, he parted with his money or property. So, too, in *People* v. *Bough*, 48 Hun, 621 (1 N. Y. Supp. 298), it was decided that a conviction of larceny by false pretenses could not be sustained when there was no proof that any reliance was placed upon the representations made by the defendant, or that any credit was given to him because of them. See, also, *State* v. *Bloodsworth*, 25 Or. 83 (34 Pac. 1023), and *Hunter* v. *State*, 46 Tex. Cr. Rep. 498 (81 S. W. 730). It will be remembered that Goss testified that he delivered the

property of the Bank of Sumpter to Miller, relying upon the check for $15,000 as being good, genuine and valid. Goss's statement in this respect is immediately disproved by his subsequent declaration under oath that the check was not presented for payment because the First National Bank of Sumpter did not have the money with which to discharge it, if he had called for it, and that at the time he accepted the check he knew he could not get the money on it, for Miller told him so. Reliance by a person upon the representations of another implies a belief in the accuracy of the declarations that inspired the confidence reposed. In the absence of faith in the truth of the statements thus made, a dependence thereon is an impossibility. It is absurd to say that Goss relied upon the validity of the check when he was told by Miller that there was no money in the bank on which it was drawn to meet the payment thereof. The testimony of Goss having disclosed this uncontradicted fact, the question to be considered is, what duty devolved upon the court when its attention was called to the defect in the proof?

In *Commonwealth* v. *Davidson,* 1 Cush. (Mass.) 33, the defendant being tried for obtaining property by false pretenses, the proof showed that he gave a false name, and the prosecuting witness having testified that this misrepresentation had no influence in inducing him to part with his goods, it was held that the trial court, upon such showing, should have instructed the jury that the misrepresentation was not established as an inducing motive to the obtaining of the goods by the defendant. In *State* v. *Crane,* 54 Kan. 251 (38 Pac. 270), it appeared upon appeal that, as the prosecuting witness had testified that he could not say he relied upon the defendant's false statement as an inducement to execute a promissory note, it was ruled that the evidence was insufficient to sustain the conviction. In *Thorpe* v. *State,* 40 Tex. Cr. R. 346 (50 S.W. 383), the plain-

tiff in error was convicted of the crime of obtaining money by false pretenses, and appealed. The testimony of the prosecuting witness showed that Thorpe was indebted to him in the sum of five dollars, and that, desiring to secure another loan of an equal sum, he offered to give a check upon a specified bank for $10. The person from whom the loan was thus sought replied that he did not believe the applicant had any money in the bank mentioned, but that he would give five dollars to catch him, and if such statement was false, he would prosecute him, whereupon he gave the sum desired, receiving the check promised. The teller of the bank on which the check was drawn testified that Thorpe never had any money on deposit therein. The court, in reversing the judgment, referring to the testimony given, says: "If the prosecuting witness had relied upon the statements of appellant that he had money in the bank, we cannot see why he should have made the threat against appellant indicated by the evidence; and when he expressly states that he did not believe appellant, and did not believe that appellant had the money, surely this statement precludes the idea that the prosecuting witness was induced to part with his money by the false representations of the appellant. The indictment must allege, in every case of swindling, and the evidence must show, that the injured party was induced to part with his property by means of the false pretenses; otherwise, it is not swindling. We do not think the evidence supports the conviction."

In *Regina* v. *Mills*, Dearsly & Bell's Crown Cases, 205, the defendant was convicted for obtaining money by false pretenses, in representing that he had cut 63 fans of chaff when he had cut only 45 fans. The evidence showed that he was employed to cut chaff at 2d per fan, and that based on the alleged false pretense he demanded 10s 6d. The prosecuting witness had previously seen him remove 18

fans from an adjoining place and add them to the heap which he pretended to have cut, but, notwithstanding such knowledge, he paid the defendant the sum demanded. It was held that on the testimony given, the conviction was wrong, as the money was not obtained by the false pretense. In *People* v. *Baker*, 96 N.Y. 340, a like conclusion was reached upon similar evidence, and in deciding the case, Mr. Justice EARL, speaking for the court, says : "We do not sit here to square the conduct of the defendant by any code of morality, or any standard of integrity ; the sole question is whether the proof was sufficient to show that he had committed the crime with which he stood charged, and we are of the opinion that it utterly failed."

Applying the rule thus announced to the case at bar, the testimony conclusively shows that Goss was correctly informed respecting all the facts relating to the transaction in question, and, as a conclusion of law based thereon, we are satisfied that he did not rely on any false representation made by Miller. In criminal actions for false pretenses it must appear from the testimony given at the trial that the party charged intended to defraud the person from whom the money or property was wrongfully obtained. The fraud in such cases depends upon the deception practiced by the defendant or his agent. In the case at bar, Miller having told Goss that there was no money in the First National Bank of Sumpter with which to pay the check, there was no deceit, and hence there was no intent on Miller's part to defraud Goss.

There having been an entire absence of testimony necessary to prove a material averment of the indictment, the court should have instructed the jury to acquit the defendant ; but, having failed to do so, the judgment is reversed, and the cause remanded for such proceedings as may be necessary, not inconsistent with this opinion.

REVERSED.