Argued February 23, affirmed March 30, petition for rehearing denied April 25, petition for review denied May 16, 1972

STATE OF OREGON, *Respondent, v.* RAYMOND JOSEPH CLERMONT, aka DEAN RAYMOND LLOYD, aka DON WEST (No. 71-434-C), *Appellant.*

495 P2d 305

*F. E. Glenn,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*Robert M. Burrows,* District Attorney, Grants Pass, argued the cause for respondent. With him on the brief was Robert F. Webber, Deputy District Attorney, Grants Pass.

Before SCHWAB, Chief Judge, and FORT and THORNTON, Judges.

THORNTON, J.

Defendant was convicted by a jury for obtaining money by false pretenses in violation of ORS 165.205. He appeals contending that the trial court erred:

(1) In overruling defendant's demurrer to the indictment on the ground that the alleged false tokens were not false;

(2) In failing to sustain defendant's motion for a directed verdict of acquittal on the same ground;

(3) In the procedure which the court followed in instructing the jury; and

(4) In accepting less than an unanimous verdict.

■ Defendant's last assignment has been decided against him in *State v. Gann,* 254 Or 549, 463 P2d 570 (1969).

This prosecution arose out of the following facts:

The Shrine Club for Josephine County sponsored a traveling circus to be held September 17, 1971. The contract provided that the circus would send in personnel to handle advance ticket sales. The ticket manager for the circus hired four telephone solicitors, who were to contact business firms in the area to sell tickets. When a sale was made over the telephone the manager would send out a collector to deliver the tickets and collect the money therefor. The tickets were printed by a printing firm in California. Each ticket contained an identification number.

Defendant applied for a job as a solicitor but was not hired. Defendant and a third party were staying with Mr. Evans, one of the hired solicitors.

Defendant and the third party arranged to have 2,000 spurious Shrine circus tickets printed up at a printing firm in Medford. The tickets were not individually numbered, however. Thereafter defendant caused 10 of the spurious tickets to be delivered to a Grants Pass shop whose owners paid $10 therefor. Defendant did not personally deliver the tickets, but was in the vicinity when delivery was made by his landlady's young son. A few days after the purchase, one of the owners of the shop turned the tickets over to the police. Neither the shop owners nor any of their customers ever had an opportunity to use them.

The secretary-treasurer of the Shrine Club testified that any child who had a ticket was admitted "regardless of whether the tickets were numbered." The Shrine Club also informed the police it would honor any ticket presented by a child.

Defendant urges that the indictment improperly alleged the circus tickets were false tokens three days before the validity of the tickets could be established, and that the crime of obtaining money by false pretenses is not a crime of the future, but a crime of misrepresenting a past or present fact.

We have not been cited to, nor have we been able to discover, any case on all fours with the case at bar. However, the present case bears some similarity to *Smith v. State*, 74 Fla 594, 77 So 274 (1917), where a well-known merchant had issued to his customers as a trade stimulator metal trade tokens as evidence of an amount due, redeemable in the hands of the holder in money or merchandise. The evidence was that defendant had procured a sizeable quantity of spurious trade tokens made in imitation of the genuine and had used them fraudulently to obtain money or property from the merchant. The court held that spurious trade tokens were false tokens within the meaning of the statute against false pretenses.

Defendant's contention that he must be acquitted because the truth or falsity of his representation that the ticket was valid could not be determined until the time of the scheduled event, cannot be sustained.

■ In order to convict of a charge of obtaining money or property under false pretenses under ORS 165.205, it must appear that the party charged (1) made a false pretense, (2) that he intended to defraud the victim, (3) that the victim relied on the false rep-

resentation believing it to be true, and (4) that the victim was prejudiced in some manner. *State v. Miller*, 47 Or 562, 85 P 81 (1906).

■■ Defendant's act of tendering the false tickets to the victim was a false written representation of a present fact, namely, that the tickets were valid, when in fact they were spurious. Thus the spurious tickets were false tokens. *Smith v. State*, supra. When the victim paid the money for the tickets believing them to be bona fide the crime of obtaining money by false pretenses was complete notwithstanding the circus was to occur at a later date. The making of the false representation and the necessary intent to defraud must be decided at the date the tickets were delivered and the money received. *See, State v. Hodges*, 5 Or App 362, 366, 484 P2d 1107 (1971); *State v. Hixson*, 205 Iowa 1321, 217 NW 814 (1928).

The fact that the Shrine Club later chose to admit to the circus any child presenting a ticket, whether bona fide or bogus, would not constitute a defense. It is a uniformly recognized and accepted proposition of the criminal law that, in the absence of statute, restitution is not a defense to crimes of this type, including false pretenses. *State v. Ewers*, 1 Or App 47, 458 P2d 708 (1969); *State v. McWilliams*, 331 SW2d 610 (Mo 1960). Just as this offense cannot be purged by subsequent restitution, *State v. Hodges*, supra, *State v. Ewers*, supra, by the same reasoning we conclude that this offense cannot be "ratified" or wiped out by similar subsequent actions by third persons such as the Shrine Club, since the crime is against the laws of Oregon. *State v. Ewers*, supra. *See generally* 32 Am Jur2d 200, False Pretenses § 38.

For the reasons stated above, cases cited by de-

fendant dealing with the law of contracts or criminal cases involving a promise to perform some act in the future, are not in point.

It follows therefore that the trial judge did not err in overruling defendant's demurrer to the indictment or in failing to sustain defendant's motion for a directed verdict of acquittal.

■ Lastly, defendant objects to the procedure followed by the trial judge in instructing the jury. As we understand this assignment defendant is contending that the trial judge failed to consider defendant's objections to the court's instructions until after those instructions had already been given to the jury.

Defendant does not contend that any instruction given was erroneous or that the court erred in failing to give any instruction requested. Therefore there is no error for us to review.

Affirmed.